COMMONWEALTH OF
MASSACHUSETTS,
Appellant,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, Appellee.

No. 95–5175.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 9, 1996.

Decided Aug. 27, 1996.

Douglas H. Wilkins, Boston, MA, argued the cause and filed the briefs for appellant. William L. Pardee, Boston, MA, entered an appearance.

Sushma Soni, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellee, with whom Frank W. Hunger, Assistant Attorney General, Mark B. Stern, Attorney, Eric H. Holder, Jr., United States Attorney, Paul M. Geier, Assistant General Counsel, United States Department of Transportation, and Peter J. Plocki, Attorney, were on the brief.

Daniel R. Barney, Robert Digges, Jr., Alexandria, VA, and Roy T. Englert, Jr., Washington, DC, were on the brief, for amicus curiae.

Before: SENTELLE, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge ROGERS.

SENTELLE, Circuit Judge:

The Commonwealth of Massachusetts ("Commonwealth" or "Massachusetts") appeals a District Court's dismissal of its action seeking judicial review of a declaration by the Department of Transportation ("DOT") that a Massachusetts licensing requirement was preempted by the Hazardous Materials Transportation Act ("HMTA"). DOT had found the state licensing rule, which required hazardous-waste carriers to post at least a $10,000 bond before they might pick up or drop off hazardous waste in the Commonwealth, preempted according to its reading of HMTA's general preemption provision codified at 49 U.S.C. § 5125(a)(2). The District Court accepted DOT's reasoning that the requirement was preempted because it ran contrary to HMTA's goal of more uniform hazardous-waste regulation.

We disagree. Even if we accord DOT's interpretation of HMTA's preemption provision *Chevron* deference, we cannot conclude that any permissible reading of HMTA authorizes preemption of the Commonwealth's requirement. We thus reverse the District Court.

## BACKGROUND

In 1975, Congress enacted the Hazardous Materials Transportation Act in an effort to develop a national regulatory scheme for the transportation of hazardous substances. *See New Hampshire Motor Transp. Ass'n v. Flynn,* 751 F.2d 43, 46 (1st Cir.1984). Although HMTA, as further amended in 1990 and as restructured in 1994, established some uniform standards in the interstate transportation of hazardous materials, the Act does not, by its terms, exclude all state participation in the regulation of hazardous waste being carried within that state's borders. 49 U.S.C. §§ 5101–5127; *see also New Hampshire Motor Transp. Ass'n,* 751 F.2d at 46 (noting that HMTA's original preemption provision did not uniformly "forbid states to regulate"). Instead, HMTA, as now written, has two separate provisions that suggest the role the states may play in promulgating and enforcing their own hazardous-waste regulations.

In one, 49 U.S.C. § 5119, the statute prescribes a "working group of State and local government officials" to help the Secretary of Transportation ("Secretary") devise "uniform forms and procedures" by which all states will "register persons that transport . . . hazardous material by motor vehicle in the State" and "allow the transportation of hazardous material in the State." *Id.* § 5119(a). That section then orders the Secretary to "prescribe regulations to carry out the recommendations contained in the report submitted" by the working group. *Id.* § 5119(c)(1). None of these § 5119 regulations, however, may take effect until "at least 26 States adopt all of the recommendations of the report." *Id.* Once such a state-endorsed, but federally promulgated, regulation takes effect, HMTA allows an individual state to "establish, maintain, or enforce [its own] requirement related to the same subject matter only if the requirement is the *same* as the [Secretary's] regulation." *Id.* § 5119(c)(2) (emphasis added).

The second provision of HMTA that explicitly addresses preemption has a less clear scope. That section, 49 U.S.C. § 5125, generally preempts any state or local requirement that makes simultaneous compliance

with HMTA and the state's regulation "not possible;" *id.* § 5125(a)(1); or "as applied or enforced, is an obstacle to accomplishing and carrying out this chapter or a regulation prescribed under this chapter." *Id.* § 5125(a)(2). The section also addresses a number of other preemption issues, including specific types of state regulation that are automatically preempted if they are not "substantively the same" as the corresponding federal requirements, *id.* § 5125(b), preemption waivers, *id.* § 5125(e), and judicial review of preemption decisions by the Secretary, *id.* § 5125(f). Neither this nor any other section of HMTA, however, explicitly addresses whether and how a state may require a waste transporter to post a bond against which the state may withdraw the amount of any fines incurred by the transporter for proven violations of the state's waste-transport rules. Likewise, DOT has not promulgated regulations as to the extent or manner of such state bonding requirements.

In the absence of federal action in this area of bonding requirements, a number of states, including Massachusetts, promulgated their own rules. Massachusetts established a bonding requirement that applies only to transporters of hazardous wastes who wish to pick up waste from or drop off waste at a location in Massachusetts. *See* 310 CMR 30.401(4). The regulation requires that a waste transporter, before it may obtain a license allowing such collection or disposal, must submit a bond of at least $10,000 in order to "assure that [it] shall faithfully perform all of the requirements" of its license and of the laws and regulations of Massachusetts. 310 CMR 30.411(3). If, at some later time, the transporter does not promptly remedy some established violation of Massachusetts's rules, the Commonwealth may seize part or all of the bond as payment of an appropriate civil penalty. *See id.* 30.411(8). Because this bond provides a surety only for the Commonwealth, and is not a general fund against which other parties may seek indemnity for their claims against the transporter, the bonding requirement is distinct from other forms of liability insurance requirements, which Massachusetts governs through a separate regulation. *See* 310 CMR 30.410.

On July 17, 1991, the National Solid Wastes Management Association challenged Massachusetts's bonding requirement, as well as those promulgated by Maryland and Pennsylvania, as preempted. Although neither HMTA nor DOT had spoken to such bonding requirements, the Research and Special Programs Administration, which is the body responsible for DOT's initial determination as to whether HMTA preempts a state regulation, nonetheless determined that HMTA preempted all three rules because the rules "create[d] an obstacle to the accomplishment and execution of ... HMTA" under what was then 49 App. U.S.C. § 1811(a)(2) (now codified at 49 U.S.C. § 5125(a)(2)). *Application by National Solid Wastes Management Association for a Preemption Determination Concerning Maryland, Massachusetts, and Pennsylvania Bonding Requirements for Vehicles Carrying Hazardous Wastes,* 57 Fed.Reg. 58848, 58855 (1992). Massachusetts and Pennsylvania moved for reconsideration and, after DOT denied their requests, sought review by the District Court. Although the District Court agreed with the plaintiffs that it should not defer to an agency's decision on preemption matters, it nonetheless dismissed their claim because the state rules frustrated HMTA's general goal of uniform waste regulation and therefore were preempted. Massachusetts appealed this decision on June 1, 1995. With our approval, the Association of Waste Hazardous Material Transporters ("AWHMT") also entered the litigation as an *amicus* in support of DOT.

## DISCUSSION

■ We need not determine whether an agency's interpretation of a statute on the preemption question is subject to *Chevron* analysis in order to decide this case, as the agency's determination here cannot be upheld with or without deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Under *Chevron,* "judicial review of an agency's interpretation of a statute under its administration is limited to a two-step inquiry." *Nuclear Info. Resource Serv. v. NRC,* 969 F.2d

1169, 1173 (D.C.Cir.1992) (in banc). In the first step, the court analyzes whether it may, "employing traditional tools of statutory construction," clearly ascertain how Congress intended the statute to apply to the facts before the tribunal. *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9. If the court can affirmatively locate such a clear meaning, it should declare that meaning and reject any "administrative constructions ... contrary to [this] clear congressional intent" because the judiciary, not the agency, "is the final authority on issues of statutory construction." *Id.* If the court cannot determine such a clear intent, it then proceeds to the second step of *Chevron.*

In this second step, a court must determine whether the agency's interpretation is a reasonable resolution of whatever ambiguity precluded a clear declaration of congressional intent in the first step. *See Hazardous Waste Treatment Council v. EPA,* 886 F.2d 355, 362 (D.C.Cir.1989) (per curiam), *cert. denied,* 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). This second inquiry is thus not independent of the first: what a court may consider a reasonable interpretation largely depends on the nature and extent of the ambiguity already identified in *Chevron*'s first step. *See, e.g., Abbott Labs. v. Young,* 920 F.2d 984, 988 (D.C.Cir.1990), *cert. denied,* 502 U.S. 819, 112 S.Ct. 76, 116 L.Ed.2d 49 (1991); *State of Ohio v. Department of the Interior,* 880 F.2d 432, 446 (D.C.Cir.1989) (deciding whether parties have advanced ambiguities "sufficient to permit" their readings); *Continental Air Lines, Inc. v. Department of Transp.,* 843 F.2d 1444, 1450 (D.C.Cir.1988) (finding agency reading to be the "more natural of the competing interpretations" advanced in the first step of the *Chevron* inquiry and thus holding it reasonable). Because the range of permissible interpretations of a statute is limited by the extent of its ambiguity, an agency cannot exploit some minor unclarity to put forth a reading that diverges from any realistic meaning of the statute lest the agency's action be held unreasonable. *See, e.g., Natural Resources Defense Council, Inc. v. Reilly,* 976 F.2d 36, 44 (D.C.Cir.1992) (Silberman, J., concurring).

Of course, what may be thought ambiguous in the first step of *Chevron* (and thus what may define a reasonable interpretation in step two) depends on the issue in question. Even a bona fide ambiguity—a point sufficiently unclear that the court cannot affirmatively declare what Congress intended the statute to mean—may be unclear in only one direction: for example, a court may not be able to say how Congress intended to regulate particular speech based only on the text and context of the statute, but the court may still reject as unreasonable an agency interpretation of the statute that would result in a ban of all such speech, in light of well-established understandings of the First Amendment. In such cases, traditional presumptions about the parties or the topic in dispute may limit the breadth of ambiguity and thus affect both the first and second steps of *Chevron.* In Native American law, for example, statutes must be "construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439, 1444–45 (D.C.Cir.1988) (quoting *Montana v. Blackfeet Tribe,* 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985)), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). As a result of this presumption, we have rejected agency interpretations of statutes that may have been reasonable in other contexts because the agency interpretation would not favor the Indians. *See id.,* 851 F.2d at 1445–46. Other time-honored canons of construction may similarly constrain the possible number of *reasonable* ways to read an ambiguity in a statute, though the application of the canon alone may not suffice to make the intent of the statute sufficiently clear for the court to pronounce what Congress intended.

In light of these considerations, and as we review a district court decision to dismiss *de novo, see Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994), we must reverse the District Court in this case. Although the District Court properly identified the issues—whether it should review DOT's determination that HMTA preempted the Massachusetts bonding requirement according to the deferential principles of *Chevron* and whether the agency's regulation was

ultimately acceptable—pertinent to a decision in this matter, we disagree with its result. Even if we review the agency's interpretation of HMTA's preemption provisions deferentially under *Chevron*, we still cannot conclude that its interpretation is a permissible reading of the statute in light of the strong presumption against federal preemption in matters traditionally regulated by the state.

Neither the Supreme Court nor this one has ever definitively decided whether an agency's determination that an *explicit* preemption provision in a statute it administers blocks some state action is reviewed according to *Chevron*. *See, e.g., Illinois Commerce Comm'n v. ICC,* 879 F.2d 917, 921 (D.C.Cir. 1989) (recognizing that the question of whether courts should extend *Chevron* deference to an agency's interpretation of an explicit preemption provision remains open); *City of New York v. FCC,* 814 F.2d 720, 725–26 (D.C.Cir.1987) (expressly not deciding whether an agency received *Chevron* deference for its interpretation of a new statutory provision that may or may not have terminated the agency's prior practice of preemption), *aff'd,* 486 U.S. 57, 64, 67, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988) (cautioning that courts should not disturb the reasonable accommodation of conflicting policies by an agency administering the statute without ever explicitly referencing *Chevron*); *cf. Smiley v. Citibank (South Dakota), N.A.,* ⸺ U.S. ⸺, ⸺, 116 S.Ct. 1730, 1735, 135 L.Ed.2d 25 (1996) (expressly not deciding the question of whether a court should defer to an agency's interpretation that a statutory provision, which does not explicitly authorize preemption, nonetheless preempts some state rule).

We thus assume, without deciding, that the principles of *Chevron* encompass an agency's interpretation of an explicit preemption provision, and proceed to examine DOT's application of HMTA's preemption clauses to Massachusetts's rule. DOT claims that any state rule of the sort promulgated by Massachusetts poses "an obstacle" to accomplishing HMTA's general goal of uniform waste regulation under 49 U.S.C. § 5125(a)(2). It further contends that, in contrast to a traditional narrow reading of preemption clauses, *see*

*Commonwealth Edison v. Montana,* 453 U.S. 609, 633–34, 101 S.Ct. 2946, 2961–62, 69 L.Ed.2d 884 (1981), the test that was codified in § 5125 had been long understood to preempt even state rules that simply interfered with a goal of federal hazardous-waste regulation. *See, e.g., Harmon,* 951 F.2d at 1580. Having thus established some support for its reading of the statute, DOT largely relies on deference to carry the day.

It does not. DOT's interpretation of HMTA, while perhaps not conclusively forbidden by the statute itself, could not be deemed reasonable in light of the text and structure of §§ 5119 and 5125 *as well as* the traditional presumption against the federal preemption of state rules in areas of traditional state regulation. *See, e.g., Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, ⸺, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). As the regulation of how waste may be picked up or dropped off in a state must be thought an area of traditional state control, *see, e.g., National Solid Wastes Management Ass'n v. Killian,* 918 F.2d 671, 676 (7th Cir.1990) (observing that "[e]nvironmental regulation has long been recognized as an 'historic police power[ ]' of the States,'") (quoting *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 442, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960)), *aff'd,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *In re Quanta Resources Corp.,* 739 F.2d 912, 913–21 (3d Cir.1984) (viewing disposal of wastes in a state as primarily a matter of concern for that state), *aff'd,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), even if we defer, we cannot conclude that a reading of § 5125 that could easily preclude most, if not all, such local regulation in the name of uniformity reasonably resolves any ambiguity that might lurk in the statute.

### 1. Chevron: Step One

In fact, we would be almost compelled to reject DOT's reading of § 5125(a)(2) at the first step of *Chevron*'s analysis. Although the text of the provision—which precludes any "obstacle to accomplishing and carrying

out [HMTA] or a regulation prescribed under [HMTA]"—does not clearly define its scope, *see id.*, substantial evidence elsewhere in § 5125 and throughout HMTA, especially when read in light of "traditional tools of statutory construction," *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9, suggests that the clear intent of the section was to preempt only state rules in explicitly described categories, state rules with which a party cannot comply if it complies with HMTA, or state rules that otherwise pose an obstacle to fulfilling explicit provisions, not general policies, of HMTA.

An examination of § 5125 itself demonstrates that the provision's obstacle test likely did not intend to preempt with a broad brush. That provision expressly identifies five types of state regulation regarding the actual transportation of hazardous wastes that would be preempted by HMTA, unless the state's version was "substantively the same" as a federal provision. 49 U.S.C. § 5125(b)(1). The section goes on to permit states to impose their own fees "related to transporting hazardous material," but only "if the fee is fair and used for a purpose related to transporting hazardous material." *Id.* § 5125(g)(1). Both the explicit prohibition of certain state packaging, documentation and classification rules and the explicit regulation of state fee rules directly contradict DOT's claim that HMTA's general goal of uniformity automatically precludes all state rules, like bonding requirements, that might affect interstate commerce and might vary from state to state. *Cf. Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 99–101, 112 S.Ct. 2374, 2383–85, 120 L.Ed.2d 73 (1992) (noting that one provision of a statute should not be interpreted in a way inconsistent with the necessary implications of another).

Additional elements of the statutory scheme also counsel against the expansive reading offered by DOT. Section 5119, the other preemption provision of HMTA, does not permit DOT to override state procedures for the "transportation of hazardous material" in a state until 26 states approve the recommendations of a working group regarding such regulations. 49 U.S.C.

§§ 5119(a)(1)(B) & (c). To read, as DOT suggests, § 5125 to allow DOT to preempt a state bonding requirement for transporters picking up or dropping off waste in that state before 26 states approve the working group's recommendations would border on rendering § 5119 superfluous. Such a result runs contrary to common sense and to established canons of statutory interpretation. *See, e.g., Smith v. United States*, 508 U.S. 223, 233–34, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993); *Gade*, 505 U.S. at 99–101, 112 S.Ct. at 2383–85; *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988); *cf. Cipollone*, 505 U.S. at 517–18, 112 S.Ct. at 2618 (refusing to read a preemptive effect into "substantive" provisions of a statute when Congress had provided an express preemption provision in that statute).

DOT's interpretation also runs afoul of another established canon of statutory construction: the established presumption against preemption in matters of traditional state control. The Supreme Court itself has demanded that courts "be reluctant to find pre-emption" in these matters, dictating that "pre-emption will not lie unless it is 'the clear and manifest purpose of Congress,'" as evidenced by the text and structure of the statute at issue. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). As the text and structure of HMTA, including § 5125, hardly demonstrates that it is "the clear and manifest purpose of Congress" to preempt state bonding requirements through § 5125, the long-standing presumption against preemption, reinforced by this precedent, would seem to demand that we reject an interpretation that would preempt not only Massachusetts's rule, but virtually all other state regulation.

Nonetheless, the fact that a number of circuits have held that the obstacle test in § 5125 precludes other types of state requirements, albeit requirements that were far more sweeping in scope than the focused rule enacted by Massachusetts, suggests that the plain wording of the statute alone may

not clearly bar DOT's current reading. *See, e.g., Chlorine Inst., Inc. v. California Highway Patrol,* 29 F.3d 495, 497–98 (9th Cir. 1994) (holding a series of state requirements, including escort vehicles, special communications equipment, and self-contained breathing apparatus, before a party may even transport certain chemicals *through* that state to be preempted); *Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community,* 991 F.2d 458, 461–62 (8th Cir.1993) (holding a tribal scheme requiring every party who wished merely to transport radioactive waste *across* tribal land to obtain a separate license to be preempted); *Harmon,* 951 F.2d at 1580–82 (declaring requirements for a state permit, which a transporter had to obtain before it could even transport nuclear waste *through* the state, to be preempted); *but see Chlorine Inst., Inc.,* 29 F.3d at 498–99 (O'Scannlain, J., specially concurring) (demonstrating that, except for precedent, the state requirement at issue in that case should not have been preempted). And despite *CSX Transportation*'s requirement that preemption must be a clear purpose of a statute before it may occur, we do not read that case to imply that a court should automatically reject an agency's finding of preemption based on a preemption statute *on the first step* of *Chevron* simply because the text of the statute does not explicitly direct such preemption. This view conforms to the Court's language in *City of New York,* which implied that a court should defer to an appropriate agency's interpretation of a preemption statute according to the standards of *Chevron. See* 486 U.S. at 64, 108 S.Ct. at 1642. Even the *CSX Transportation* Court examined several agency regulations for some "affirmative indication" that they intended to preempt state rules on a particular subject, and that Court did not rule that the state regime escaped preemption until this search discovered no such affirmative intent. 507 U.S. at 667–68, 113 S.Ct. at 1739–40. As the Supreme Court in *CSX Transportation* did not rule against preemption until it had at least examined whether the relevant agency had put forth a reasonable interpretation that would have commanded preemption, we will do likewise.

### 2. *Chevron: Step Two*

■ Finally, even if we afford to the Department the deference it claims, and if we then pass the first step of *Chevron,* we would still not hold the Department's interpretation reasonable. In light of the powerful and well-established presumption against extending a preemption statute to matters not clearly addressed in the statute in areas of traditional state control, we cannot credit an interpretation of an explicit preemption provision, such as the one of § 5125 offered by DOT, that would even preclude a rule that only affects those parties who wish to load or unload such waste within a particular state, and may sweepingly preclude state rules in many areas of hazardous-waste regulation within that state. We are particularly reluctant to accept such a reading of such a provision when its implications would render superfluous at least two other segments of that provision's statutory scheme—in this case, the list of expressly preempted provisions in § 5125(b)(1) and the framework established for making state rules consistent in § 5119(c).

Moreover, we cannot accept such a dubiously broad reading when the seeming goal of the statute that the agency seeks to "accomplish[ ]" through preemption is not even clearly grounded in that statute. 49 U.S.C. § 5125(a)(2). Although DOT alleges that it must preempt Massachusetts's rule because HMTA, in its preamble, seeks a "greater uniformity" in waste regulation, *see Northern States Power Co.,* 991 F.2d at 461 (quoting Hazardous Materials Transportation Uniform Safety Act of 1990, Pub.L. No. 101–615, § 2, 104 Stat. 3244, 3245 (1990)), the limited goal of "greater uniformity" is a far cry from DOT's implicit claim that HMTA demands *absolute* uniformity in matters of bonding requirements. Such a claim lacks credibility in light of numerous indications to the contrary in the statute itself. In particular, the presence of § 5119, which expressly established that federal standards may not override state procedural requirements until 26 states approve the recommendations of a working group on the subject, precludes any such expansive assessment of HMTA's goals. As DOT's interpretation necessarily conflicts

with other HMTA provisions and does not preempt only those state rules essential to the "accomplishing" of HMTA, *id.* § 5125(a)(2), we cannot conclude that its interpretation of § 5125 is reasonable.

## CONCLUSION

DOT's interpretation is impermissible, even if measured against the deferential standard of *Chevron.* *See Illinois Commerce Comm'n,* 879 F.2d at 921. Not only does HMTA not specify absolute uniformity as its goal, neither § 5125 nor HMTA in general suggests that either preempts all state bonding requirements regarding the pick up or drop off of hazardous wastes in that state simply because they may preclude absolute uniformity. We therefore reverse the District Court.

ROGERS, Circuit Judge, concurring:

I concur in the court's conclusion that the agency's interpretation of the Hazardous Materials Transportation Act, 49 U.S.C. § 5125(a)(2) as "demand[ing] *absolute* uniformity in matters of bonding requirements," Op. at 896, cannot be reconciled with the statutory language or structure. Op. at 894–95. Resolution of this appeal requires no more. Hence, the question of the proper standard of review of an agency's interpretation of an express preemption statute, *see Smiley v. Citibank (South Dakota), N.A.,* —— U.S. ——, ——, 116 S.Ct. 1730, 1735, 135 L.Ed.2d 25 (1996) (distinguishing between an agency's interpretation of the substantive meaning of a statute and the question of whether a statute is pre-emptive), remains open. See Op. at 893–94.