STATE OF NEW YORK BY ITS DE-
PARTMENT OF ENVIRONMENTAL
CONSERVATION, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION; Rodney Slater,
Secretary of Transportation, Defen-
dants,

and

Association of Waste Hazardous
Materials Transporters,
Intervenor–Defendants.

No. 97–CV–784 (FJS)(RWS).

United States District Court,
N.D. New York.

Feb. 9, 1999.

Eliot Spitzer, Attorney General for the State of New York, Albany, NY (David A. Munro, Asst. Atty. Gen., of counsel), for plaintiff.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, NY (Thomas Spina, Jr., Asst. U.S. Atty. of counsel), United States Department of Justice, Washington, D.C. (Margaret S. McCarty, Special Asst. U.S. Atty. of counsel), for defendants.

Mayer, Brown & Platt, New York City (Philip A. Lacovara, of counsel), for Intervenor–Defendant.

Department of Environmental, Protection, Tallahassee, FL (Augusta P. Posner, Asst. Atty. Gen., of counsel), for Amicus Curiae.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiff, the State of New York acting through its Department of Environmental Conservation ("NYDEC"), brings this action seeking the judicial review of a preemption determination made by the United States Department of Transportation ("DOT"). In that agency ruling, DOT found that New York regulation 6 N.Y.C.R.R. § 372.3(a)(7)(i), which in very general terms prohibits the consolidation and transfer of hazardous wastes, was preempted by the Hazardous Materials Transportation Act ("HMTA"). Presently before the Court are DOT's motion for

summary judgment and NYDEC's cross-motion for summary judgment.

## Background

In October of 1993, the Chemical Waste Transportation Institute filed a petition with DOT for a preemption determination concerning several requirements established by NYDEC. Initially, nine provisions of the New York regulations were challenged, but because NYDEC eliminated and/or modified several requirements, DOT only ruled on three of them. In December of 1995, DOT determined that the three regulations were preempted by the HMTA. Upon reconsideration, however, DOT decided to reverse its decision with respect to one of the regulations, but to uphold its decision with respect to the other two.

On June 2, 1997, this action was commenced. Because NYDEC and DOT have reached an agreement with respect to one of the two regulations, the only remaining issue in this action is whether NYDEC's provision on consolidation and transfer of hazardous waste contained in 6 N.Y.C.R.R. § 372.3(a)(7)(i) is preempted by the HMTA.

Prior to discussing the merits of the motions, it is necessary to set forth the relevant statutes that are involved in the action and/or arguments of the parties.

### Hazardous Materials Transportation Act

The Hazardous Materials Transportation Act ("HMTA") was enacted in 1975 to establish uniform standards for the transportation of hazardous materials in interstate commerce. In 1990, the HMTA was amended by the Hazardous Materials Transportation Uniform Safety Amendments Act of 1990, and with such amendments, Congress also changed the HMTA's preemption provision, in part to improve the uniformity of the application of the preemption rule.

Section 5125(a) of the HMTA contains a general preemption clause. This clause provides that:

Except as provided in subsections (b), (c), and (e) of this section and unless authorized by another law of the United States, a requirement of a State ... is preempted if—

(1) complying with a requirement of a State ... and a requirement of [the HMTA] is not possible; or

(2) the requirement of a State ... as applied or enforced, is an obstacle to accomplishing and carrying out [the HMTA].

49 U.S.C. § 5125(a).

Several specific substantive preemptions are also included in the HMTA in § 5125(b), as Congress believed these to be vital safety areas.

Section 5125(b)(1) states:

Except as provided in subsection (c) of this section and unless authorized by another law of the United States, a law, regulation, or other requirement of a State ... about any of the following subjects that is not substantively the same as a provision of [the HMTA], is preempted:

...

(B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.

49 U.S.C. § 5125(b)(1)(B).

DOT was given statutory authority to promulgate regulations consistent with the HMTA, and has done so in the Hazardous Materials Regulations. *See* 49 C.F.R. §§ 171–179 (classifying hazardous materials and establishing requirements with respect to shipping papers, marking, labeling, placarding, packaging, highway routing, and driver training). In particular, DOT has established standards to utilize in determining whether a state requirement should be preempted. *See* 49 C.F.R. § 107.202.[1] Additionally, the Secre-

1. The regulation states, in relevant part:

(a) Except as provided in § 107.221 and

tary of DOT was given the authority to render decisions regarding whether state requirements are preempted.[2] The Secretary also has the authority to grant a waiver of preemption when the state law: (1) provides the public at least as much protection as do the requirements under the HMTA; and (2) is not an unreasonable burden on commerce. *See* 49 U.S.C. § 5125(e).

## Resource Conservation and Recovery Act ("RCRA")

The RCRA is a federal act that establishes a comprehensive scheme for the regulation of waste management activities. With respect to hazardous waste, the RCRA generally encourages the states to adopt their own programs. If the state program is at least as stringent as the RCRA, the United States Environmental Protection Agency ("EPA") may authorize the state to administer the RCRA hazardous waste program in that state. EPA has authorized NYDEC to administer the RCRA programs in New York. As such, New York has adopted a RCRA program, and in fact, the NYDEC regulation at issue in this case was promulgated under this authority and is more stringent[3] than the RCRA requirements.

## New York State Regulation

The NYDEC regulation at issue in this case is 6 N.Y.C.R.R. § 372.3(a)(7)(i), which states in relevant part:

> unless otherwise authorized by Federal law, any requirement of a State or political subdivision thereof or an Indian tribe, that concerns one of the following subjects and that is not substantively the same as any provision of the Federal hazardous material transportation law, this subchapter or subchapter C that concerns that subject, is preempted:
>
> . . .
>
> (2) The packing, repacking, handling, labeling, marking, and placarding of hazardous material.
>
> . . .
>
> (d) For purposes of this section, "substantively the same" means that the non-Federal requirement conforms in every significant respect to the Federal re-

The following standards are applicable to transporters of hazardous waste unless specifically exempted or modified in this section:

> (a) General Requirements.
>
> . . .
>
> (7) Transporters are permitted to transfer hazardous waste, incidental to transport, provided that:
>
> (i) No consolidation or transfer of loads occurs either by repackaging, mixing, or pumping from one container or transport vehicle into another.

6 N.Y.C.R.R. § 372(a)(7)(i).

## Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of fact is one that could be decided in favor of either party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

quirement. Editorial and other similar de minimis changes are permitted.

**2.** Section 5125(d) states that a person affected by a requirement of a state may apply to the Secretary for a decision on whether the requirement is preempted. The Secretary then must publish notice of the pending matter and issue a decision within 180 days. After the notice is published, the person seeking the determination may not seek judicial relief on the same or substantially the same issue until the Secretary takes final action or until 180 days is passed, whichever comes first.

**3.** The parties do not dispute the characterization of the regulation as "more stringent," as opposed to "broader in scope," than EPA regulations promulgated under the RCRA.

Where, as here, the Court is faced with cross-motions for summary judgment, it is not obligated to grant either motion. Instead, each motion must be evaluated on its own merits, " 'taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Heublein Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Board of Educ.,* 667 F.2d 305 (2d Cir.1981)).

 Initially, the Court notes that the general basis for the doctrine of federal preemption of state laws within areas that the federal government has power to act is found in the Supremacy Clause of the Constitution. *See* U.S. Const. Art. VI, cl. 2. However, a presumption against such preemption arises out of the Tenth Amendment in areas that the states have exercised their traditional police power. *See* U.S. Const. Amend. X; *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Accordingly, where federal law touches upon an area traditionally governed by the states pursuant to their historic police powers, courts generally will not find preemption unless "that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

In this case, the intent of Congress to preempt state requirements in the five HMTA "covered subjects" was clear. In fact, Congress' intent to preempt in the general field of transportation of hazardous materials, which includes those five subjects, was so clear that Congress included two preemption provisions in the HMTA—one general and one specific. Each provision, however, allows for an exemption if the state regulation is "authorized by another law of the United States."

NYDEC seeks summary judgment[4] asserting the following grounds as the basis for judgment in its favor: (1) the NYDEC

regulation is authorized by another federal law, namely the RCRA, and therefore is not subject to preemption under the HMTA; and (2) that even if the NYDEC regulation is subject to preemption, the de novo standard of review applies in the Court's review of DOT's preemption determination, and DOT erred in deciding that the NYDEC regulation is "about" a HMTA "covered subject" and therefore expressly preempted. DOT also moves for summary judgment and counters that: (1) the NYDEC regulation is not authorized by the RCRA; and (2) its interpretation of the HMTA is entitled to substantial deference under the arbitrary and capricious standard of review, and the NYDEC regulation falls within a "covered subject" of the HMTA and is expressly preempted. The Court will address these arguments seriatim.

## I. Authorization of the NYDEC Regulation by the RCRA

 As stated, NYDEC maintains that its challenged regulation is not subject to preemption by the HMTA because it has been authorized by the RCRA. NYDEC initially argues that primary jurisdiction of regulating hazardous *waste* is given to EPA, while regulation of hazardous *material* is given to DOT. NYDEC then asserts that Congress explicitly recognized that states have to play a crucial role in hazardous waste management, and as a result included a "state authorization" scheme under the RCRA through which EPA may authorize a state to administer and enforce state regulations in lieu of the federal program, so long as the state requirements are equivalent to, or as in the present case "more stringent" than, the federal requirements. NYDEC maintains that state regulations that are "more stringent," as opposed to "broader in scope," than federal regulations become a part of the RCRA. They then argue that the NYDEC regulation in question, since it restricts the abili-

---

4. The State of Florida through its Department of Environmental Conservation as amicus curiae supports NYDEC's motion for summary judgment.

ty of transporters to commingle hazardous wastes, is a "more stringent" state regulation, and therefore it falls within the exception of being authorized by another statute of the United States and is not subject to the HMTA "covered subject" preemption provision.

DOT, on the other hand, maintains that it has primary jurisdiction over the regulation and transportation of hazardous material including hazardous waste. While DOT acknowledges that the RCRA permits the state to establish requirements that are more stringent than the minimum federal requirements, DOT contends that the state may do so only to the extent the state regulations do not conflict with the HMTA. DOT points out that Congress, in enacting the RCRA, did so with the intended purpose of maintaining consistent standards for transporters so as not to interfere with interstate transportation. DOT argues that the RCRA mandates that EPA regulations be consistent with DOT regulations, and therefore, the NYDEC regulation concerning consolidation and/or transfer of hazardous waste, even though approved by EPA, must be consistent with DOT regulations. DOT further contends that EPA does not have authority to determine if a state requirement complies with the HMTA, but only authority to determine if it is consistent with the RCRA.

■ The Court agrees that DOT does have primary jurisdiction over the regulation of the transportation of hazardous waste as hazardous "material" includes that of "waste." *See* 49 C.F.R. § 171.8 (definition of "hazardous material" includes "hazardous substances, hazardous wastes"). While EPA has jurisdiction over the regulation of hazardous waste management,[5] including some aspects of transportation,[6] EPA is statutorily obligated to co-ordinate its RCRA regulations applicable to transporters of hazardous waste with DOT regulations applicable to transporters of all hazardous material. *See* 42 U.S.C. § 6923(b); H.R.Rep. No. 1491, 94th Cong., 2d Sess.1976, *reprinted in* 1976 U.S.C.C.A.N. 6238, 1976 WL 14072; *see also* 40 C.F.R. § 263.10 (noting that "EPA and DOT worked together to develop standards for transporters of hazardous waste in order to avoid conflicting requirements.").[7] Furthermore, despite the

5. In so far as NYDEC asserts that its regulation concerns the management, not transportation, of hazardous waste, the Court finds that this assertion is undermined by one of NYDEC's main contentions throughout the proceedings before DOT—that the NYDEC regulation is about "loading" and "unloading" which are activities expressly included in the HMTA's definition of "transportation." *See* Administrative Record at 375 ("A.R."); 49 U.S.C. § 5102(12) (defining "transportation" as "the movement of property and loading, unloading, or storage incidental to the movement.").

6. "Hazardous waste management" is defined as "the systematic control of the collection, source separation, storage, transportation, processing, treatment, recovery, and disposal of hazardous waste." 40 C.F.R. § 260.10. "Hazardous waste" is defined as "any material that is subject to the Hazardous Waste Manifest Requirements of the U.S. Environmental Protection Agency specified in 40 CFR Part 262." *Id.*

7. The Court is aware that the legislative history of the HMTA, not cited to by the parties, concerning the phrase "authorized by another law of the United States" may lend support for the argument that RCRA provides "authorization" of the NYDEC regulation at issue. *See* H.R.Rep. No. 101–444(I), 101st Cong., 2d Sess.1990, 1990 WL 259162. Such history states that:

> The Committee recognizes that provisions of other Federal laws may overlap with provisions of the HMTA. By including the phrase, "unless otherwise authorized by Federal law," the Committee intends to allow States ... to act in accordance with other Federal laws in adopting laws or regulations which might otherwise be preempted .... For example, under programs approved by the EPA in administering the [RCRA], States may require waste haulers to report information on the Federally-required Uniform Hazardous Waste Manifest in addition to complying with Federal information requirements. · Such requirements, since they are "otherwise authorized by Federal law," would not be preempted by this section.

However, as previously stated, while the RCRA permits states to establish "more strin-

RCRA's recognition that states are permitted to establish requirements which are "more stringent" than EPA regulations, *see* 42 U.S.C. § 6929, when dealing with transporters of hazardous wastes, this general state empowerment must be read in conjunction with the statutory mandate that EPA regulations be consistent with the HMTA. *See* 42 U.S.C. § 6923(b); *see also Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (explaining that courts "must read the statutes to give effect to each if we can do so while preserving their sense and purpose."); *Yiu Sing Chun v. Sava*, 708 F.2d 869, 874 (2d Cir.1983) (stating that the court's "duty is to give harmonious operation and effect to all statutory provisions if possible, absent some explicit indication of legislative intent derived from either the words of the statute or its legislative history.").

Finally, EPA clearly does not decide whether a preemption problem exists under the HMTA when considering an application for state authorization under the RCRA. *See, e.g.*, California, 57 Fed.Reg. 32,726 (Envtl. Protection Agency July 23, 1992) (Final Authorization of State Hazardous Waste Management Program). In fact, evidence demonstrates that EPA refuses to consider any possible preemption under the HMTA as it appears that EPA considers DOT as authoritative in the field of transportation matters. *See id.* As such, the Court finds that EPA's authorization of a state RCRA program is not the equivalent of "authoriz[ation] by another law of the United States." Therefore, if the NYDEC regulation at issue is "about" one of the "covered subjects," then the NYDEC regulation must be found to be preempted as it is not "authorized" by the RCRA.[8]

## II. DOT's Preemption Determination

### A. Standard of Review

■ NYDEC contends that the de novo standard of review should be applied because this case concerns the interpretation of a statute, and therefore DOT's determination of preemption is a legal determination that should be independently reviewed by the Court. As support for its argument, NYDEC cites *Colorado Pub. Utilities Comm'n v. Harmon*, 951 F.2d 1571, 1578–79 (10th Cir.1991), and *Commonwealth of Massachusetts v. United States Dep't of Transp.*, 93 F.3d 890, 894 (D.C.Cir.1996).

DOT asserts that its interpretation of the HMTA and its regulations, in arriving at its determination, should be afforded substantial deference because: there is long standing legal authority that requires courts to review agency determinations under the arbitrary and capricious standard; the HMTA expressly provides DOT with authority to interpret the statute; and established case law requires courts to defer to the judgment of an agency with regard to topics within the agency's expertise.[9]

---

gent" requirements, it also requires its regulations to be consistent with HMTA, and that is a decision that DOT must make. When EPA authorizes a state to administer the RCRA program, it does not consider any possible preemption issue under the HMTA because it believes the matter is more appropriately addressed by DOT. *See, e.g.*, California, 57 Fed. Reg. 32,726 (Envtl. Protection Agency July 23, 1992) (Final Authorization of State Hazardous Waste Management Program). Furthermore, if the mere authorization of the state RCRA program by the EPA constituted automatic "authorization" within the meaning of the HMTA's preemption provision, it hard to imagine why Congress did not simply delegate such authority to EPA or provide for an explicit exception to the preemption provisions.

**8.** As previously stated, the second "exemption" from the "covered subject" preemption provision is not applicable since the parties do not dispute that the NYDEC regulation has no substantively similar counterpart in the HMTA or its regulations.

**9.** DOT cites 49 U.S.C. § 5125(d); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); *City of New York v. Federal Communications Comm'n*, 486 U.S. 57, 64, 67, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988); *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740–42,

Intervenor–Defendant, Association of Waste Hazardous Materials Transporters ("AWHMT"), has provided additional argument in support of the arbitrary and capricious standard of review. AWHMT contends that when the HMTA was amended in 1990, Congress included two ways of obtaining a preemption determination—(1) through DOT, and reviewed by the court; or (2) directly to the court. Furthermore, the legislative history reveals that the intent was that "judicial review of the Secretary's decision would be limited to the review accorded administrative decisions. In other cases, the court would consider the preemption issues de novo." H.R.Rep. No. 101–444(I), 101st Cong., 2d Sess.1990, 1990 WL 259162, at *126.

The Court finds that the cases NYDEC cites as support for the applicability of the de novo standard of review are distinguishable. While the Tenth Circuit in *Colorado Pub. Utils. Comm'n v. Harmon*, 951 F.2d at 1578–79, analyzed a DOT preemption determination under both the HMTA's general and "covered subject" preemption provisions, the court discussed the issue of the proper standard of review with respect to the preemption determination based on the "general" preemption provision, which is not at issue in this case. Additionally, the D.C. Circuit in *Commonwealth of Massachusetts v. United States Dep't of Transp.* made clear that it was not rendering an opinion as to what standard of review is applicable to an agency's interpretation of a statute in the context of a preemption decision. *See* 93 F.3d at 892.

The Court finds that the analysis set forth by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is most instructive given the facts of this case.

According to *Chevron*,

116 S.Ct. 1730, 135 L.Ed.2d 25 (1996); *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 714–15, 105 S.Ct. 2371, 85

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 843, 104 S.Ct. 2778.

Therefore, the first prong of *Chevron* requires courts to determine whether Congress has spoken directly and unambiguously on the precise issue presented, and if so, the court and the agency must give effect to that intent. *See Fulani v. Federal Communications Comm'n*, 49 F.3d 904, 910 (2d Cir.1995). The second prong of *Chevron*, which is resorted to if the statute is ambiguous, involves the consideration of whether the agency's construction of the statute is permissible. *See id.* The agency's construction will be deemed permissible unless it is found to be "arbitrary, capricious, or manifestly contrary to the statute." *Florez v. Callahan*, 156 F.3d 438, 445 (2d Cir.1998); *see also Skubel v. Fuoroli*, 113 F.3d 330, 335 (2d Cir.1997). Therefore, as long as the agency's interpretation is reasonable, the court may not substitute its own judgment regarding the proper interpretation of the statute. *See Florez*, 156 F.3d at 445.

L.Ed.2d 714 (1985); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

## B. First Prong of *Chevron*

■ Under the first prong of the *Chevron* analysis, the Court must decide whether Congress has directly spoken to the precise question at issue, and if so, the Court must give effect to the unambiguously expressed intent of Congress without regard to what the agency did. As stated, there is no ambiguity with respect to Congress' intent to preempt all state requirements in five substantive areas, one being the "packing, repacking, handling" of hazardous materials during transportation, unless the state requirement was either "authorized by another law of the United States" or "substantively the same" as the provisions of the HMTA or the regulations thereunder. In this case, the Court must determine whether Congress meant for the covered subject of "packing, repacking, handling, labeling, marking, and placarding of hazardous material" to include the activities of "consolidat[ing] or transfer[ring] loads ... either by repackaging, mixing, or pumping from one container or transport vehicle into another," which the NYDEC regulation concerns.

■ Ambiguity results when the court is unable to determine the proper interpretation of the pertinent statutory provision by " 'employing traditional tools of statutory construction,' " which includes the examination of the language of the statutory provision, legislative history, purpose, and structure. *Skubel v. Fuoroli*, 113 F.3d 330, 335 (2d Cir.1997) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (other citations omitted)); *see WLNY–TV, Inc. v. Federal Communications Comm'n*, 163 F.3d 137 (2d Cir.1998); *Southern Cal. Edison Co. v. FERC*, 116 F.3d 507, 515 (D.C.Cir.1997).

The HMTA does not define the terms "packing, repacking," which are the subjects under which DOT determined the NYDEC regulation fell. Applying the ordinary meaning to the words,[10] the Court is not able to determine, with absolute certainty, the parameters and scope of the "covered subject" that is at issue in this case. Moreover, an examination of the legislative history surrounding Congress' decision to preempt state requirements in the field of "packing, repacking" does not assist in clarifying the issue.[11] In particular, the Court is unable to determine whether Congress meant "packing, repacking" to include the subject matter that the NYDEC regulation covers—namely, the "consolidation or transfer of loads ... either by repackaging, mixing, or pumping from one container or transport vehicle into another." The Court, therefore, finds that the HMTA is ambiguous on this point, and will then proceed to consider the second prong of *Chevron*—whether DOT's interpretation of the HMTA is based on a

10. In interpreting a statute, courts should apply the "ordinary, contemporary, common meaning" of the words used. *Skubel*, 113 F.3d at 335 (citing *United States v. Kinzler*, 55 F.3d 70, 72 (2d Cir.1995)). Webster's Dictionary defines "packing" as "the action or process of packing something" or "a method of packing." "Pack" is defined numerous ways, including as "a bundle arranged for convenience in carrying" and "to make into a compact bundle ... to put in a protective container ... to increase the density of." "Repacking" is not defined, but the prefix "re" means "again, anew" and thus "repacking" would mean to pack again.

11. The Committee described that there was a special need for uniformity in the area of "packing, repacking, handling, labeling, marking, and placarding" in order to:

promote safety at all stages of hazardous materials transportation. Conflicting requirements for any of these subjects will confuse all who come into contact with hazardous materials, including shippers, carriers, and other handlers of such materials in transit. Of major importance as well is the need for consistency for those who respond to emergencies involving hazardous materials. Different requirements in these areas would lessen the ability of emergency responders quickly to identify hazardous materials, thus impairing their ability promptly and effectively to respond to any emergency.
H.R.Rep. No. 101–444(I), 101st Cong., 2d Sess.1990, 1990 WL 259162, at *93.

permissible construction of the statute or is arbitrary and capricious.

## C. Second Prong of *Chevron*

NYDEC argues that its regulation is about the "commingling of loads" or the "transferring of loads" and not "about" "packing, repacking [or] handling" of hazardous materials, and therefore the regulation does not fall within a HMTA "covered subject."

As previously stated, as with all questions of statutory interpretation, if the statute is silent or ambiguous, the Court must "defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is sufficiently reasonable." *See Skandalis v. Rowe*, 14 F.3d 173, 179 (2d Cir.1994) (internal quotations and citations omitted).

While a reviewing court may not substitute its own judgment for that of the agency, the court must be satisfied that the agency examined all relevant factors, offered an explanation that showed a "rational connection between the facts found and the choice made," and did not make a "clear error of judgment." *Motor Vehicle Mfr. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).[12]

■ In this case, DOT determined that the NYDEC regulation unquestionably was "about" or concerned the "covered subject" of "packing [and] repacking" of hazardous wastes. In its preemption determination, DOT found that neither the HMTA nor its regulations contained a provision that was "substantively the same" as the NYDEC regulation. While the HMTA permits the transferring, repackaging and/or combination of hazardous materials as long it will not cause an unsafe condition,[13] the NYDEC regulation absolutely prohibits the repackaging of hazardous wastes regardless of whether the resulting condition will be safe, unless the transporter obtains a permit to operate as a treatment, storage, and disposal facility. For example, DOT found that under the HMTA the transporters could transfer waste from a cargo tank motor vehicle into a rail tank car, or combine identical wastes together from smaller containers into a bulk container without causing an unsafe condition.[14] Under the NYDEC regulation, however, both activities would be prohibited. Therefore, DOT found that the NYDEC regulation was preempted by the HMTA's "covered subject" preemption provision.

The Court cannot find this interpretation to be unreasonable or irrational, especially in light of NYDEC's ever-changing interpretation of what its own regulation is truly about.[15] The Court finds DOT's interpretation to be reasonable because when a transporter "consolidat[es]" or "transfers [s] . . . loads either by repack-

---

12. "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

13. *See, e.g.,* 49 C.F.R. § 173.33(a)(2); 49 C.F.R. § 173.10(e); 49 C.F.R. § 177.856(d); 49 C.F.R. § 174.81(f); 49 C.F.R. § 177.848(d).

14. In fact, DOT asserts that this is a common occurrence in the industry.

15. The administrative record reveals that NYDEC has argued that its regulation was about "loading," "unloading," and "transportation" and therefore since none of these terms involve a "covered subject," the HMTA preemption provision did not apply. *See* A.R. at 211–12, 214, 369–71, 374–75, Presently, NYDEC asserts that its regulation is about "commingling" and "transferring," neither of which are "covered subjects." The Court finds that NYDEC's contentions are meritless as the meaning of the phrases at issues cannot be decided by mere reference to only one of the words in the phrase, let alone words that *do not even appear* in the NYDEC regulation.

Moreover, at the administrative level, NYDEC argued that its regulation was substantively the same, consistent with, and comple-

**162**

aging, mixing, or pumping from one container or transport vehicle into another," the transporter is inevitably engaging in the repacking of the hazardous wastes.[16] In fact, even if the Court did not have DOT's interpretation and application of the "covered subject" preemption provision to which it could defer, the outcome would be the same because when the entire NYDEC regulation is read in is entirety without taking the words "consolidation" and "transfer" out of context, the regulation appears to fall into the "covered subject" of "repacking."

Since the Court finds that DOT's determination that the NYDEC regulation concerned a "covered subject" was not arbitrary and capricious, the Court must uphold DOT's preemption determination, and therefore grants DOT's cross-motion for summary judgment.[17]

### Conclusion

After carefully considering the entire file, the submissions of the parties, and the applicable law, it is hereby

ORDERED that the Plaintiff's cross-motion for summary judgment is DENIED; and it is further

ORDERED that the Defendants' motion for summary judgment is GRANTED and the action be DISMISSED in its entirety.

**IT IS SO ORDERED.**

mentary to DOT regulations, specifically the regulation forbidding transferring hazardous wastes from one container to another that will result in an unsafe condition and the regulation forbidding the tampering with containers. *See* A.R. at 212, 372. DOT rejected both of these assertions in its determination, and NYDEC has abandoned them in this action.

16. This is supported by NYDEC's description of its regulation at the administrative level as a "prohibition against the opening of containers and the combining of wastes from different containers or sources by other than TSD facilities." A.R. at 367.

17. Although it may seem that the state should be able to regulate the movement of hazardous waste within its borders out of a concern for the heath and safety of its citizens and environment and within its traditional police powers, the fact is that Congress, pursuant to its authority under the Commerce Clause and the Supremacy Clause, has seen the need to preempt all state requirements which are not "authorized by another law of the United States" and are "about" the five "covered subjects." However, the Court points out that NYDEC could have applied for a waiver of preemption from DOT but failed to do so. *See* 49 U.S.C. § 5125(e).