PUBLIC CITIZEN, INC., Plaintiff,

v.

Jacob J. LEW, Director of the Office
of Management and Budget, et
al., Defendants.

No. CIV.A.97–2891 SSH.

United States District Court,
District of Columbia.

Dec. 11, 2000.

Michael Edward Tankersley, Lucinda A. Sikes, Public Citizen Litigation Group, Washington, DC, for Plaintiffs.

Pamela Jane Aronson, Kirkland & Ellis, Washington, DC, Carole Annette Jeandheur, U.S. Dept. of Justice, Civil Division, Washington, DC, for Defendants.

### OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are (1) defendants' motion for summary judgment; (2) plaintiff's cross-motion for summary judgment on its claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1994 & Supp. IV); (3) plaintiff's motion for summary judgment against the Department of State ("State"), Department of Justice ("DoJ"), and Department of Education ("Education"); (4) plaintiff's cross-motion for summary judgment on its claim under the Paperwork Reduction Act (the "PRA"), 44 U.S.C. §§ 3501–3520 (1994 & Supp. III 1997); and (5) plaintiff's motion to strike the supplemental declaration of Donald R. Arbuckle. Upon consideration of the parties' pleadings and the entire record, the Court (1) denies defendants' summary judgment motion; (2) grants in part and denies in part plaintiff's cross-motion for summary judgment on its FOIA claim; (3) denies as moot plaintiff's separate summary judgment motion against State, DoJ, and Education; (4) grants in part and denies in part plaintiff's cross-motion for summary judgment on its PRA claim; and (5) denies plaintiff's motion to strike. Although findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56, see Fed.R.Civ.P. 52(a); Summers v. Department of Justice, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court sets forth its reasoning.

### I. Background

On March 26, 1998, plaintiff filed a two-count amended complaint in this action against defendants Office of Management and Budget ("OMB"), Office of the United States Trade Representative ("USTR"), Office of Administration ("OA"), Department of Energy ("DoE"), State, DoJ, and Education (collectively "the government" or "defendants"). Plaintiff challenges defendants' compliance with various requirements under the PRA and FOIA relating to the indexing of their information systems; an information system is a system that organizes information for collection, processing, maintenance, transmission, and dissemination. See 61 Fed.Reg. 6428, 6431 (Feb. 20, 1996). First, plaintiff alleges that defendants have failed to prepare and make available to the public, upon request, an index and description of their major information systems, in violation of 5 U.S.C. §§ 552(g)(1) & (2). Second, plaintiff alleges that defendants have failed to maintain a current and complete inventory of their information systems, in violation of

44 U.S.C. § 3506(b)(4).[1] *See* Am. Compl. ¶¶ 17–31. Plaintiff requests a judgment declaring that defendants are not in compliance with these provisions, and appropriate injunctive relief.

## A. *Statutory Framework*

The PRA requires each federal agency to "maintain a current and complete inventory of the agency's information resources, including directories necessary to fulfill the requirements of section 3511 of this chapter." 44 U.S.C. § 3506(b)(4). An agency's "information resources" consist of "information and related resources, such as personnel, equipment, funds, and information technology." *Id.* § 3502(6). Congress enacted § 3506(b)(4)'s requirement that agencies maintain a current and complete inventory of their information resources when it amended the PRA in 1995; as originally enacted, the PRA required that agencies "systematically inventory [their] major information systems." 44 U.S.C. § 3506(c)(1) (1988) (repealed). Although the 1995 amendments repealed this provision, § 3506(b)(4) preserves the requirement that agencies inventory their major information systems by virtue of its reference to § 3511, which requires the OMB Director to establish and maintain an "electronic Government Information Locator Service ["GILS"] . . . which shall identify the major information systems, holdings, and dissemination products of each agency." 44 U.S.C. § 3511(a)(1). The parties disagree, however, over whether § 3506(b)(4) requires agencies to inventory all of their information systems, or only those information systems that qualify as "major" under the applicable definition. *See infra* Part III.C.

FOIA imposes a similar requirement on agencies to inventory their major information systems. Enacted as part of the Electronic Freedom of Information Act Amendments of 1996, § 552(g) states:

> The head of each agency shall prepare and make publicly available upon request, reference material or a guide for requesting records or information from the agency, subject to the exemptions in subsection (b), including—
>> (1) an index of all major information systems of the agency;
>> (2) a description of major information and record locator systems maintained by the agency; and
>> (3) a handbook for obtaining various types and categories of public information from the agency pursuant to chapter 35 of title 44, and under this section.

5 U.S.C. § 552(g).

Neither FOIA nor the PRA define the term "major information system." Nevertheless, the Office of Information and Regulatory Affairs ("OIRA")—the office within OMB charged with implementing the PRA, *see* 44 U.S.C. § 3503—defined the term for purposes of the PRA when it promulgated OMB Circular A–130. Under this definition, a "major information system" is an "information system that requires special management attention because of its importance to an agency mission; its high development, operating, or maintenance costs; or its significant role in the administration of agency programs, finances, property, or other resources." 61 Fed.Reg. at 6431. An information system is "a discrete set of information resources organized for the collection, processing, maintenance, transmission, and dissemination of information, in accordance with defined procedures, whether automated or manual." *Id.* Although the OIRA promulgated the definition of "major information system" while implementing provisions of the PRA, the legislative history of the 1996 FOIA amendments indicates that Congress intended this definition to apply to § 552(g) as well. *See* S.Rep. No. 104–272, at 12 (1996). Thus, the parties

---

1. Plaintiff's claims under the PRA and FOIA are contained in Count I of its amended complaint. The Court dismissed Count II as moot in its July 14, 1998, Memorandum Order.

agree that OMB Circular A–130's definition of "major information system" applies to plaintiff's claims under FOIA and the PRA. *See* Pl.'s FOIA Cross-Mot. at 5–6; Defs.' Mot. at 3–5.

### B. *The Parties' Summary Judgment Motions*

The government moved for summary judgment on plaintiff's FOIA and PRA claims with respect to defendants OMB, USTR, OA, and DoE in July 1998.[2] In response to this motion, plaintiff filed a cross-motion for summary judgment against all seven defendants on its FOIA claim ("FOIA cross-motion"). After completing discovery on the extent to which each defendant was complying with § 3506(b)(4), plaintiff filed a cross-motion for summary judgment against all seven defendants on its PRA claim ("PRA cross-motion") in November 1999. These three summary judgment motions are currently before the Court, as well as plaintiff's motion to strike a declaration filed as an exhibit to the government's reply in support of its motion and opposition to plaintiff's FOIA cross-motion ("Reply & Opposition").

Plaintiff also filed a separate motion for summary judgment on its FOIA and PRA claims against defendants State, DoJ, and Education. Plaintiff filed this motion after filing its FOIA cross-motion, but before filing its PRA cross-motion. The basis for this separate motion was the government's concession in its Reply & Opposition that the three defendants were not in compliance with the requirements of 5 U.S.C. §§ 552(g)(1) & (2), and 44 U.S.C. § 3506(b)(4). *See* Defs.' Reply & Opp'n at 2 n. 2. In its subsequent opposition to plaintiff's PRA cross-motion, however, the government asserted that the three agencies are now in compliance with these provisions. *See* Defs.' Opp'n to Pl.'s PRA

Cross–Mot. at 1 n. 1 and 3. Because the government has effectively withdrawn its concession that State, DoJ, and Education are not in compliance with their statutory obligations, plaintiff's summary judgment motion is now moot. Accordingly, the Court will assess State's, DoJ's, and Education's compliance with the FOIA and PRA provisions in the larger context of the government's motion for summary judgment and plaintiff's cross-motions for summary judgment.

### II. *Standard of Review*

■■■ Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Within this framework, the Court reviews defendants' compliance with the FOIA and PRA provisions under the Administrative Procedure Act ("APA"), which empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review under this standard is narrow, and precludes a court from "substitut[ing] its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Nevertheless, where the agency has failed to consider factors relevant to its inquiry or has relied on impermissible factors, or where the agency has committed a "clear error of judgment," the court must undo its action. *Id.; accord GTE Serv. Corp. v. F.C.C.,* 205 F.3d 416, 421–22 (D.C.Cir.2000); *DIRECTV, Inc. v. F.C.C.,* 110 F.3d 816, 826 (D.C.Cir.1997).

■■■ In applying this standard, the Court will accord substantial deference to OMB's interpretation of the definition of

---

**2.** The government originally included defendant Education in this motion, but effectively withdrew the motion with respect to Education when it conceded that Education was

not in compliance with the relevant FOIA and PRA provisions. *See* Defs.' Reply & Opp'n at 2 n. 2.

"major information system" insofar as it is interpreting its own regulation. *See National Wildlife Fed'n v. Browner,* 127 F.3d 1126, 1129 (D.C.Cir.1997) ("Generally, the court accords substantial deference to an agency's interpretation of its own regulations."); *see also Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.,* 194 F.3d 125, 128 (D.C.Cir.1999) ("An agency's interpretation of its own regulation merits even greater deference than its interpretation of the statute that it administers."); *Paralyzed Veterans of America v. D.C. Arena L.P.,* 117 F.3d 579, 584 (D.C.Cir.1997) (similar). For the most part, OMB's interpretation of this definition is set forth in the supplemental declaration of Donald Arbuckle ("Arbuckle Supplemental Declaration"), the Deputy Administrator of OIRA.[3] *See* Defs.' Reply & Opp'n, Ex. 4. Provided this interpretation "does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *National Wildlife Fed'n,* 127 F.3d at 1129 (quoting *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (internal quotation and citation omitted)).[4]

■ Plaintiff, nevertheless, contends that OMB's interpretation of its definition in the PRA context does not merit comparable deference in the FOIA context. *See* Pl.'s FOIA Cross–Mot. at 16 n. 2. Plaintiff's argument lacks merit. Admittedly, courts review an agency's interpretation of FOIA *de novo* because "[n]o single agency is entrusted with FOIA's primary interpretation, and agencies are not necessarily neutral interpreters insofar as FOIA compels release of information the agency might be reluctant to disclose." *Association of Retired R.R. Workers v. United States R.R. Retirement Bd.,* 830 F.2d 331, 334 (D.C.Cir.1987); *accord FLRA v. U.S.*

*Department of the Treasury, Fin. Management Serv.,* 884 F.2d 1446, 1451 (D.C.Cir.1989). Nevertheless, this case does not present a situation in which an agency is construing a statutory exemption to FOIA's disclosure requirements. More importantly, OMB is not bereft of interpretive authority with respect to § 552(g) because Congress expressly approved OMB's definition of "major information system" in the context of § 552(g). The legislative history to the 1996 FOIA amendments states:

> The term "major information system" is familiar to Federal agencies since it is defined in OMB Circular A–130.... In accordance with OMB Circular A–130, agencies should already be establishing inventories of their "major information systems." This new requirement [that agencies provide access to an index and description of their major information systems] is not overlapping but, instead, is a consistent and coordinated legislative requirement to support administrative efforts already underway.

S.Rep. No. 104–272, at 12 (internal footnote omitted). Because Congress imported OMB's definition of "major information system" from the PRA regime, the Court will accord OMB's interpretation of that definition a level of deference in the FOIA context commensurate with that to which it is entitled in the PRA context.

■ Relatedly, plaintiff also argues that the Court should review *de novo* each defendant's determination of which information systems qualify as major. The Court disagrees. As with an agency's interpretation of the FOIA statute, an agency's withholding of records pursuant to a claimed FOIA exemption is reviewed *de novo. See Quinon v. FBI,* 86 F.3d 1222, 1227 (D.C.Cir.1996). Nevertheless, Con-

---

3. This supplemental declaration is the subject of plaintiff's motion to strike. For the reasons discussed in Part III.A, *infra,* the Court denies plaintiff's motion.

4. Whether OMB's interpretation of the scope of § 3506(b)(4)'s requirements is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is discussed in Part III.C, *supra.*

gress explicitly mandated this standard of review with respect to actions challenging such withholdings in 5 U.S.C. § 552(a)(4)(B). Other FOIA actions outside the scope of § 552(a)(4)(B), however, are reviewed under the standards set forth in § 706 of the APA. *See, e.g., McDonnell Douglas Corp. v. NASA,* 180 F.3d 303, 307 (D.C.Cir.1999) (analyzing reverse-FOIA claim under standards in § 706(2)(A)); *Reliance Electric Co. v. Consumer Prod. Safety Comm'n,* 924 F.2d 274, 277 (D.C.Cir.1991) (same). Admittedly, the rationale for mandating *de novo* review of an agency's withholding of records—agencies' reluctance to disclose certain information—is applicable to a review of agency action under § 552(g); this provision requires agencies to disclose the major information systems containing records that are the subject of FOIA requests. Nevertheless, in the absence of any statutory authorization for reviewing *de novo* agency action under § 552(g), the Court will not deviate from the standards mandated in § 706 of the APA.[5]

Finally, the government argues that "the implementing statutes and OMB Circular A–130 leave discretion to agencies to determine what documents meet the definition of major information system within the confines of the definition of that term." Defs.' Opp'n to Pl.'s PRA Cross–Mot. at 4. The thrust of the government's argument is unclear; it does not argue that the process of designating information systems as major is committed to agency discretion by law under 5 U.S.C. § 701(a)(2), but appears to suggest that the Court should accord agency designations some form of heightened deference, beyond that inherent in the arbitrary and capricious standard. Such deference is unwarranted. In support of its argument, the government relies on OMB's interpretation of Circular A–130's definition in the declaration of Donald Arbuckle, which states that "[d]etermining whether a par-

ticular information system qualifies as a 'major information system' involves an exercise of judgment, which requires a detailed understanding of the agency's mission priorities and is, in OMB's view, best left to the discretion of the agency." Arbuckle Decl. ¶ 16. Nevertheless, the Arbuckle Declaration does not cite any basis in FOIA or the PRA for according agencies this discretion, nor can the Court discern any. Although the Court will defer to OMB's interpretation of its own regulation, it will not simply ratify OMB's unsupported—and, in the context of this litigation, self-serving—attempt to endow its co-defendants with a level of discretion that would shield their actions from judicial scrutiny. To do so would effectively eviscerate the level of review available under § 706(2)(A). Accordingly, the Court reviews defendants' application of the definition of "major information system," as interpreted by OMB, under the arbitrary and capricious standard, and does not accord defendants any deference beyond that inherent in the standard.

## III. *Discussion*

### A. *Plaintiff's Motion To Strike*

Plaintiff moves to strike the Arbuckle Supplemental Declaration. As indicated, Arbuckle is the Deputy Administrator of the OIRA, and served as the Acting Administrator when he prepared the declaration. The declaration sets forth the OIRA's interpretation of Circular A–130 and the scope of § 3506(b)(4). Plaintiff argues that Federal Rule of Civil Procedure 56(e) bars submission of this declaration because it requires that declarations submitted in connection with a summary judgment motion "set forth such facts as would be admissible in evidence"; plaintiff contends that the Arbuckle Supplemental Declaration impermissibly presents "argument and legal conclusions" instead of facts. Pl.'s Mot. To Strike at 1.

---

5. The Court also notes that plaintiff's amended complaint states that this action arises

under, *inter alia,* "the Administrative Procedure Act, 5 U.S.C. § 706." Am. Compl. ¶ 2.

The government counters that the Arbuckle Supplemental Declaration is a permissible interpretation by OMB of the statute it administers and its implementing regulations. *See* Defs.' Opp'n at 1–4. Plaintiff responds that the declaration is not a permissible agency interpretation because it is a *post hoc* rationalization of OMB's conduct offered to advance its litigating position, and is not based on any OMB regulations, rulings, or administrative practices. *See* Pl.'s Reply at 2–3.

 As a general rule, agency "litigating positions" are not entitled to deference when they merely represent counsel's "*post hoc* rationalizations" of agency conduct, and are "wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *accord Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). Such agency positions are not entitled to deference because they do not necessarily reflect the views of the agency, but rather may have been developed hastily, without adequate consideration of opposing positions pursuant to the agency's normal deliberative process. *See FLRA*, 884 F.2d at 1455. Nevertheless, "[t]he mere fact that an agency offers its interpretation in the course of litigation does not automatically preclude deference to the agency"; deference is proper as long as the agency's interpretation "reflects the 'agency's fair and considered judgment on the matter.'" *National Wildlife Fed'n*, 127 F.3d at 1129 (quoting *Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1016 (D.C.Cir.1999), *cert. denied*, 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000) (agency need not promulgate a legislative rule setting forth interpretation to be entitled to deference; "[e]ven if the legal briefs contained the first expression of the agency's views, un-der the appropriate circumstances," they would still be entitled to deference).

Applying these standards, the Court denies plaintiff's motion to strike the Arbuckle Supplemental Declaration because it finds that the declaration represents OMB's fair and considered judgment on the interpretation of the OMB circular and § 3506(b)(4). First, the interpretation was not offered by government counsel, but rather by the Acting Administrator of the OIRA, the office within OMB charged with implementing the PRA. *See FLRA*, 884 F.2d at 1455 (because agency head explicitly adopted view of amicus brief, there was "no risk that counsel may have acted as 'mavericks disembodied from the agency that they represent.'" (internal citation omitted)). Second, although plaintiff contends that the interpretations offered in the supplemental declaration are unsupported by prior OMB regulations, rulings, or practice, "there is nothing to suggest that the agency has ever before had any reason to address the issue." *National Wildlife Fed'n*, 127 F.3d at 1129. Indeed, the Court is unaware of any case or administrative action implicating the definition of "major information system" under FOIA and the PRA, or the proper scope of § 3506(b)(4). In short, the Court finds no reason to doubt that the Arbuckle Supplemental Declaration represents OMB's fair and considered judgment on those issues, and accordingly declines to strike the declaration from the record.

## B. *Summary Judgment on Plaintiff's FOIA Claim*

 As discussed, plaintiff's amended complaint alleges that defendants have failed to prepare and make available to the public, upon request, an index and description of their major information systems, in violation of §§ 552(g)(1) & (2). In moving for summary judgment on this claim with respect to defendants OMB, USTR, OA, and DoE, the government provides a brief description of each agency's purported index of major information systems. At the

end of each description, the government states: "Although [the defendant] has other information systems, they do not qualify as major information systems as defined in OMB Circular A–130." *See* Defs.' Mot. at 8–10. In support of each statement, the government cites a declaration of an official in the relevant agency; each cited portion of the declaration concludes, without discussion or analysis, that although the agency has other information systems not included in its index, they do not qualify as major information systems under the OMB circular definition. *See* Crawford Decl. ¶ 9; Kristobek Decl. ¶ 7; Gallant Decl. ¶ 12; Landon Decl. ¶ 7. As already discussed, however, defendants do not have unfettered discretion to determine which of their information systems qualify as major under the controlling definition. *See supra* Part II. Because the assertions made in the government's motion and the declarations of the agency officials are hardly sufficient to satisfy the government's burden of showing that it is entitled to judgment as a matter of law, the Court denies the government's motion for summary judgment on plaintiff's FOIA claim.

For its part, plaintiff pursues two broad lines of argument in moving for summary judgment on its FOIA claim. First, plaintiff makes a general argument that information systems containing certain records designated as "permanent" for archival purposes qualify as major information systems as a matter of law, and alleges that defendants have failed to designate certain systems containing permanent records as major. Second, plaintiff makes specific arguments with respect to each defendant's alleged failure to index major information systems. Plaintiff, however, does not purport to catalog every alleged violation of § 552(g)(1); rather, plaintiff offers examples of common misapplications of Circular A–130's definition by defendants. As set forth below, the Court disagrees with plaintiff's first argument, but finds that defendants are misapplying the definition of "major information system."

### 1. *Permanent Records and Major Information Systems*

The Federal Records Act ("FRA"), 44 U.S.C. §§ 3301–3324, governs the disposition of records maintained by federal agencies. Agency records are classified as either "temporary" or "permanent" for the purpose of determining whether, and for how long, the government will preserve them. *See* 36 C.F.R. §§ 1228.28, 1228.30. "A temporary record is any record which has been determined by the Archivist of the United States to have insufficient value ... to warrant its preservation by the National Archives and Records Administration [NARA]." *Id.* § 1220.14. "Permanent records" are records that have been determined "to have sufficient historical or other value to warrant preservation" by the National Archives. *Id.* § 1228.262(a).

Pursuant to this classification process, "[f]ederal agencies propose permanent retention of records in accordance with guidelines contained in the NARA records management handbook." *Id.* § 1228.28(a). NARA then determines whether the records in fact possess permanent value and, if so, when they should be transferred to the National Archives. *See id.* § 1228.28(c). NARA's records management handbook states:

NARA designates records as permanent if they have sufficient historical or other value to warrant their continued preservation by the Government. Such records may be kept mainly because they document an agency's origins, organization, functions, and significant transactions and activities. Or they may be kept mainly because they document the persons, places, things, or matters dealt with by an agency; that is because they contain information with significant research or reference value....

Permanent records require special attention .... They should be created on archival-quality media and kept properly and in good order. For example, they

should be stored in appropriate containers and facilities and not be intermixed with other permanent or temporary records.

Pl.'s FOIA Cross–Mot., Ex. 4, at IV–5 and VI–5. Plaintiff draws a parallel between these standards and the definition of "major information system"; as discussed, a "major information system" is an "information system that requires special management attention because of its importance to an agency mission; its high development, operating, or maintenance costs; or its significant role in the administration of agency programs, finances, property, or other resources." 61 Fed. Reg. at 6431. Plaintiff argues that any information system containing permanent records qualifies, as a matter of law, as a major information system under the OMB circular definition, insofar as "permanent records require 'special management attention' because of their importance to an agency mission, or significant role in the administration of agency programs." Pl.'s FOIA Cross–Mot. at 14–15.

The government admits that certain records classified as permanent under the FRA may exist within a major information system under FOIA, but contends that the mere presence of a permanent record does not automatically qualify an information system as major. The government primarily relies on the Arbuckle Supplemental Declaration, which states that "OMB has never construed the term 'major information system' in the PRA and Circular A–130 as necessarily including all information systems that contain 'permanent records.'" Arbuckle Suppl. Decl. ¶ 37. The basis for OMB's interpretation turns on the different focal points of the FRA and the PRA. The declaration explains that the FRA is a records management statute, whereas the PRA—the statute giving rise to the term "major information system"— is an "information policy statute," addressing not only records management, but also information resources management. Id. ¶ 24 (citing 44 U.S.C. §§ 3504(b)-(h)). The

requirement that agencies inventory their major information systems falls under the rubric of information resources management. See id. ¶¶ 25–31. Information resources management is "the process of managing information resources to accomplish agency missions and to improve agency performance, including through the reduction of information collection burdens on the public." 44 U.S.C. § 3502(7). In this context, whether an information system is major under the OMB circular definition "depends on the burden that the 'information system' places on the agency's budget and personnel and on the role that the 'information system' plays in the agency's achievement of its mission." Arbuckle Suppl. Decl. ¶ 31. Thus, the definition necessarily focuses on the "the impact and role that the 'information system' has in the ongoing operations of the agency." Id. By contrast, the classification of a record as permanent under the FRA turns on whether the record has sufficient "historical or other value to warrant preservation." Id. ¶ 32 (quoting 36 C.F.R. § 1228.262). Given the different focal points of the PRA and FRA provisions, there is no "perfect overlap between 'major information system' and 'permanent record.'" Id.

Because this interpretation of "major information system" represents OMB's interpretation of its own regulation, the Court must give it controlling weight, provided it does not violate the Constitution or a federal statute, and is not plainly erroneous or inconsistent with the regulation. National Wildlife Fed'n, 127 F.3d at 1129. OMB's interpretation does not violate the Constitution. As to the other prongs of the required analysis, the Court agrees with OMB that the inquiries into whether a record qualifies as "permanent" and whether an information system qualifies as "major" are distinct, as the former focuses on a record's historical value while the latter focuses on a system's current value. Arguably, however, OMB overstates the significance of this distinction; a record may acquire historical value by vir-

tue of its current value. Moreover, given the similarity in NARA's classification standards and the OMB circular's definition of "major information system," the presence of multiple permanent records within an information system may provide evidence that the system should be designated as "major." Nevertheless, because the classification of a record as permanent and the designation of an information system as major serve different functions under different statutory schemes, the Court finds that OMB's interpretation rejecting any "perfect overlap" does not violate the PRA or FOIA, and is not plainly erroneous or inconsistent with Circular A–130. Accordingly, the presence of a record classified as "permanent" pursuant to the FRA does not, as a matter of law, qualify an information system as "major" under OMB Circular A–130's definition.

### 2. *Defendants' Individual Compliance with § 552(g)*

Plaintiff provides a non-exhaustive list of instances in which each defendant has failed to include information systems allegedly qualifying as major in its index. Although the Court will not substitute its judgment for that of the agencies by mandating which agency systems qualify as major, the examples cited by plaintiff persuade the Court that defendants OMB, USTR, State, DoJ, and Education have misapplied the definition in the OMB circular.

Preliminarily, the Court notes that the parties' briefing of plaintiff's PRA cross-motion for summary judgment is relevant to their respective summary judgment motions on plaintiff's FOIA claim because the government argues that an agency's obligation under § 3506(b)(4) of the PRA, with respect to information systems, is co-extensive with its obligation under § 552(g)(1) of FOIA to index its major information systems. *See, e.g.,* Defs.' Re-

ply & Opp'n at 5–6; Defs.' Opp'n to Pl.'s PRA Cross–Mot. at 2. Although plaintiff disputes this interpretation, arguing that § 3506(b)(4) requires an agency to index all of its information systems, its PRA cross-motion alternatively argues that, even under the government's interpretation, defendants are not in compliance with § 3506(b)(4) because they have not compiled a complete inventory of their major information systems. Plaintiff's PRA cross-motion points to information systems, allegedly qualifying as major under the definition in OMB Circular A–130, which defendants have excluded from their indexes. Because this portion of plaintiff's PRA cross-motion, and the government's response thereto, are relevant to defendants' compliance under § 552(g)(1), the Court will consider it in its discussion of plaintiff's FOIA claim. The Court also notes that, with respect to some record files, plaintiff cites their designation as "permanent" pursuant to the FRA as proof that they were unlawfully excluded from defendants' index of major information systems. Because the Court concludes that a system's inclusion of "permanent" records does not automatically qualify it as major under Circular A–130, it will not consider examples of information systems where plaintiff relies solely on this rationale to allege that they were improperly excluded.

### a. *OMB*

■ OMB's index of major information systems contains six information systems.[6] *See* Pl.'s PRA Cross–Mot., Ex. 2. Among the information systems that plaintiff alleges OMB has failed to properly designate as major are OMB's Administration Budgetary Files and Administration Office Subject Files, and the budgetary and program records of each OMB branch office. *See* Pl.'s FOIA Cross–Mot. at 18. The government contends that OMB did not

---

**6.** OMB's index may be accessed at the web site: <http://www.whitehouse.gov/OMB/ gils/ gils-top.html>. Each listing of a major infor-

mation system contains a link to a description of that system.

wrongfully exclude those systems from its index of major information systems because they contain "paper-based files that pose relatively little burden for OMB staff to maintain and use, and require relatively little management attention." Defs.' Reply & Opp'n at 12 (citing Crawford Suppl. Decl. ¶ 15). Nevertheless, whether an information system requires special management attention because it is burdensome to maintain represents only one way in which it may qualify as major under the definition in Circular A–130; as noted, an information system also qualifies as major if it requires special management attention because of "its importance to an agency mission" or "its significant role in the administration of agency programs, finances, property, or other resources." 61 Fed.Reg. at 6431. Indeed, OMB's interpretation of its definition in the Arbuckle Supplemental Declaration reiterates that the three criteria are alternative means for designating an information system as major. Arbuckle Suppl. Decl. ¶ 31 ("Under Circular A–130, an 'information system' is 'major' because the system 'requires special management attention' for one of several reasons . . . ."). Thus, OMB has misapplied the definition of "major information system" by considering only one prong of that definition.

Relatedly, plaintiff suggests that OMB is unlawfully excluding systems from its list of major information systems because they are manual, rather than automated. See Pl.'s PRA Cross–Mot. at 18 (citing Crawford Suppl. Decl. ¶ 15). Plaintiff relies on a portion of the supplemental declaration of Clarence Crawford (the "Crawford Supplemental Declaration"), who is the head of OMB's Administration Office, which explains that certain paper records were excluded from OMB's inventory of major information systems because they pose relatively little burden to maintain and use, and do not require the special management attention described in the OMB Circular. Crawford Suppl. Decl. ¶ 15. Nevertheless, the Crawford Supplemental Declaration also states that OMB

has not categorically excluded manual systems from its index of major information systems, and provides examples of manual systems included in its index. See Crawford Suppl. Decl. ¶¶ 6–7. On the basis of this record, the Court does not find that OMB is categorically excluding manual systems.

 Plaintiff also challenges OMB's exclusion of its word-processing system from its list of major information systems. The Crawford Supplemental Declaration states that OMB does not have a centralized word-processing system, but rather uses stand-alone computers whose capabilities constitute "applications" and fall outside the definition of an information system. Crawford Suppl. Decl. ¶ 10. An "application" is "the use of information resources (information and information technology) to satisfy a specific set of user requirements." 61 Fed.Reg. at 6439. In support of its conclusion, the Crawford Supplemental Declaration relies on OMB's interpretation of Circular A–130, which excludes certain word-processing capabilities from the definition of information system. The Arbuckle Supplemental Declaration states that the OMB circular distinguishes between "major applications" and "general support systems." Arbuckle Suppl. Decl. ¶ 18. A "major application" is "an application that requires special attention to security due to the risk and magnitude of the harm resulting from the loss, misuse, or unauthorized access to or modification of the information in the application," whereas a "general support system" is an "interconnected set of information resources under the same direct management control which shares common functionality." 61 Fed.Reg. at 6439. A general support system, but not a major application, is a type of information system. See Arbuckle Suppl. Decl. ¶ 18. The Arbuckle Supplemental Declaration states that a word-processing capability is a common type of "application," and would not constitute a "general support system"—and hence not a potential "major information system"—

unless the capability "were principally characterized by 'interconnect[ion]' amongst the users, and if the 'interconnected set of information resources' were 'under the same direct management control' and '[shared] common functionality.'" *Id.* ¶ 19.

■ Plaintiff offers two rebuttals of this position. First, plaintiff argues that nothing in the definition of "major information system" excludes "major applications." OMB's interpretation, however, is entitled to controlling weight, *see supra* Part II, as the Court finds no indication that it violates a statute, or is plainly erroneous or inconsistent with Circular A–130. Second, plaintiff argues that, even under this interpretation, OMB's word-processing capability qualifies as a major information system because the computers used to operate the system are interconnected. *See* Pl.'s PRA Cross–Mot. at 19 & n. 5 (citing Arbuckle Deposition). The government counters that "OMB has a decentralized word processing capability that uses stand-alone personal computers, rather than a mainframe word processing system that has local stations," and distinguishes OMB's word-processing capability from such centralized systems as OMB's budget, regulatory, and legislative systems, which OMB has designated as major. Defs.' Opp'n to Pl.'s PRA Cross–Mot. at 5–6. Nevertheless, the government's response overlooks certain statements made by Donald Arbuckle indicating that OMB's computers are in fact interconnected and allow OMB staff to share word-processing services, in the same manner that OMB's legislative and budget systems are interconnected and allow certain OMB staff to share those services. *See* Arbuckle Dep. at 36:7–19, 37:10–38:3. To be sure, OMB's word-processing capabilities are not generated through a mainframe computer, but rather appear to operate on a network system, which connects computers through a common server. However, nothing in OMB's interpretation of word-processing systems meeting the definition of a "general support system"—a precondition for qualifying as a "major information system"—excludes networked computer systems. Accordingly, simply because OMB's word-processing system is not generated through a mainframe computer does not bar it from qualifying as a major information system.

In sum, the Court finds that defendant OMB is misapplying its definition of "major information system" by failing to consider two of the alternative prongs of the definition, and by excluding its word-processing capability on the ground that it is not generated through a mainframe computer.

### b. *USTR*

■ USTR's index of major information systems contain six systems.[7] *See* Kristobek Decl. ¶ 8. Plaintiff argues that defendant USTR has improperly excluded its file systems labeled Multilateral Trade Negotiations, Bilateral Trade Negotiations, and Multilateral and Bilateral Trade Negotiations Agreements Implementation from its list of major information systems. The government contends that these systems do not qualify as major because they are no longer in current use by the agency. Defs.' Reply & Opp'n at 13. Plaintiff, however, counters that the OMB circular's definition of "major information system" does not require that the information system be in current use, and contends that any such requirement would be inconsistent with one of the "key benefits" of FOIA's indexing requirements—to "provide[ ] the public with guidance on how agency records are maintained and organized so that they can formulate more reasonable FOIA requests." Pl.'s FOIA Reply at 8–9.

---

7. USTR relies on its GILS site to satisfy the FOIA indexing requirement. That site may be accessed at <http://www.ustr.gov/ef-oia/gils.html> and contains links to descriptions of each major information system.

16

The Court finds that USTR's exclusion of information systems from its list of major systems on the ground that they are not in current use is a proper application of the definition of a "major information system" because it is consistent with OMB's interpretation of Circular A–130. Under that interpretation, a determination as to whether an information system qualifies as major turns on an assessment of the impact that it has on the ongoing operations of the agency. *See supra* Part III.B.1. An information system that is not in current use, however, does not have an impact on an agency's ongoing operations. Moreover, agencies often do not maintain possession of the contents of information systems that have become inactive. For example, files that are designated as "permanent" under the FRA are transferred to the National Archives when an "agency no longer needs to use the records for the purpose for which they were created or in its regular current business." 36 C.F.R. § 1228.262(a)(2)(i); *see also* Gallant Suppl. Decl. ¶ 11. Thus, USTR properly excluded from its FOIA index information systems that are no longer in current use.

 Plaintiff also challenges USTR's compliance with the FOIA indexing requirement by focusing on the criteria applied by Richard Kristobek, the USTR official responsible for compiling USTR's index. During his deposition, Kristobek stated that the criteria he used for designating an information system as major were that the information system meet the definition in OMB Circular A–130, that it

be costly to maintain, that it be in current use, and that it be maintained by more than one unit within USTR. Kristobek Dep. at 72:17–73:3. Plaintiff contends that Kristobek improperly excluded information systems from its index "based on criteria that do not appear in Circular A–130." Pl.'s PRA Cross–Mot. at 22.

 The Court agrees with plaintiff that the criteria used by Kristobek do not comport with the definition in the OMB circular. Although the requirement that the system be in current use is a proper ground for excluding information systems from USTR's index, the requirements that the system be costly to maintain and be used by more than one unit are not.[8] First, although a system's high development, operating, or maintenance costs represent one basis for qualifying it as major, a system may alternatively qualify as major if it requires special management attention because of its "importance to an agency mission ... or its significant role in the administration of agency programs, finances, property, or other resources." 61 Fed.Reg. at 6431. The cost of maintaining the system under either of these alternative prongs is irrelevant.[9] Second, the OMB circular discloses no basis for requiring that an information system be used by more than one unit within USTR to qualify as a major information system. That only one unit within an agency uses a particular information system does not, as a matter of law, foreclose the system from requiring special management attention for one of

8. The government argues that Kristobek's statements during his deposition do not show that he used cost as a "factor in addition to the Circular A–130 factors," but rather that he used it as one of the Circular A–130 factors—*i.e.*, that he applied it within the confines of the definition. Defs.' Opp'n to Pl.'s PRA Cross–Mot. at 7. The Court disagrees. In response to the question, "if [a system] was not costly to maintain, did you exclude it from the list of major information systems?", Kristobek responded: "Yes." Kristobek Dep. at 70:15–18; *see also id.* at 70:1–6 (stating that costliness of maintaining system "was one of

the criteria that was required to include it" in index).

9. Kristobek cites the lack of cost or burden for maintaining two systems singled out by plaintiff—the Trade Policy Staff Committee ("TPSC") master files and subfiles—as a ground for excluding them from USTR's index. *See* Kristobek Suppl. Decl. ¶¶ 4–5; *see also* Defs.' Reply & Opp'n at 13–14. As discussed, however, cost alone is not a sufficient ground for exclusion. The TPSC systems are properly excludable only if they fail all three prongs of Circular A–130's definition.

the reasons enumerated in the OMB circular.[10]

In sum, although USTR has properly excluded information systems no longer in current use from its FOIA index, it has misapplied Circular A–130's definition by requiring that a major information system be costly to maintain or be used by more than one unit within the agency.

### c. OA

Defendant OA's index of major information systems contains six information systems.[11] Plaintiff contends that OA's index generally excludes manual information systems and, more specifically, excludes the paper-based subject files of the Deputy Director, which relate to the OA's major functions, policy decisions, and administrative management activities. *See* Pl.'s FOIA Cross–Mot. at 29–30 & Ex. 3; Pl.'s PRA Cross–Mot. at 24. The government responds that OA's index does not include any manual information systems because none of its manual systems meets the definition in the OMB circular. *See* Defs.' Reply & Opp'n at 14 (citing Gallant Suppl.

Decl. ¶ 10). More particularly, the government states that the Deputy Director files do not meet the definition because they "do not require special management attention; were not expensive to develop, operate or maintain; and do not play a significant role in the administration of agency programs, finances, property, or other resources." *Id.* (citing Gallant Suppl. Decl. ¶ 10). The Court agrees with plaintiff that the government's response to its allegations regarding OA's systems is conclusory, and simply attempts to track the language of the OMB circular definition.[12] *See* Pl.'s FOIA Reply at 11. Nevertheless, plaintiff has not established that it is entitled to summary judgment by showing that OA has categorically excluded manual systems, or relied on an impermissible factor or committed a clear error of judgment in excluding the Deputy Director files from its index of major information systems. Although plaintiff argues that the Deputy Director files are sufficiently important to warrant preservation as "permanent" files under the FRA, as discussed, this designation does not automatically qualify the system as major.[13]

10. Relatedly, Kristobek's supplemental declaration suggests that an information system must be important to the "overall" agency mission in order to meet the definition in the OMB circular. *See* Kristobek Suppl. Decl. ¶ 4 (stating, with respect to systems used by only one unit, that "[w]hile the systems may be significant to the unit maintaining them, they are ordinarily only a part of the overall mission of the agency."). Such a requirement is not a proper application of the definition; even the prong explicitly mentioning an agency's mission states that a system may qualify as major if it requires "special management attention because of its importance to *an* agency mission." 61 Fed.Reg. at 6431 (emphasis added). The importance of the system need not be as comprehensive as that suggested by Kristobek's emphasis on the agency's "overall" mission.

11. OA's index contains descriptions of its major information systems and is posted on its web site at <http://www.whitehouse.gov/WH/EOP/html/other/foia/findex.html>.

12. The Court notes that this portion of the government's Reply & Opposition, and the declaration on which it relies, does not accurately restate Circular A–130's definition of "major information system," because it appears to treat the requirement that a system need special management attention as a prong unto itself, and eliminates the "importance to an agency mission" factor. *See supra.* As already discussed, the "special management attention" requirement applies to—and actually arises out of—all three prongs of the definition. On the basis of the record before it, however, the Court cannot discern whether this misstatement reflects an actual misapplication of the definition by OA.

13. The Court notes that, while the Deputy Director files are not listed as one of OA's major information systems, a description of these files may be accessed through the link titled OA's Record Disposition Schedules (NCI–429–79–2), which appears on the site containing OA's index of major information systems. *See supra* note 13.

#### d. *DoE*

█ In its FOIA cross-motion, plaintiff argued that DoE had not prepared an inventory or description of its major information systems, but rather had simply used a list of its library and database resources to satisfy FOIA's requirements. Pl.'s FOIA Cross–Mot. at 28–29. Plaintiff's PRA cross-motion states that DoE began to prepare a single index of its major information systems in accordance with the OMB circular definition in 1998, and posted this list on the Internet in February 1999.[14] Plaintiff contends, however, that DoE's index is still incomplete because it excludes manual systems; during his deposition, Howard Landon, the official responsible for compiling DoE's list, stated that he could not recall whether DoE considered any non-automated systems for inclusion on the list. Landon Dep. at 62:21—63:6. As an example of an improperly excluded manual information system, plaintiff points to certain litigation files maintained by DoE, which DoE describes as "[s]ignificant case files determined by DoE to have had a significant effect on a statute, regulation, or rule." *Id.*, Ex. 5 at 2. The government counters plaintiff's assertions by pointing to other portions of Landon's deposition in which he stated that most of DoE's systems are automated and that DoE did not categorically exclude manual systems from its list of major information systems. *See id.* at 61:22, 62:17–20.

The ambiguous (and somewhat inconsistent) indications in Landon's deposition create an issue of material fact as to whether DoE actually considered manual information systems for inclusion in its index of major information systems. Nor does DoE's exclusion of its significant litigation files help to resolve this issue by providing evidence that DoE failed to consider manual systems; DoE may have concluded that this set of files does not constitute a major information system after applying the definition in Circular A–130. In this vein, the Court is not satisfied that DoE improperly excluded this system from its index of major information systems. Although plaintiff argues that a system of case files that DoE deems to have had a "significant effect on a statute, regulation, or rule" constitutes a major information system because it invariably plays a significant role in the administration of agency programs, plaintiff has not provided a more specific description of the case files in this system and the agency programs they purportedly affect. On the sole basis of DoE's one-sentence description of its case files, the Court cannot conclude that it committed a clear error of judgment in excluding them from its index.

#### e. *State*

█ As discussed, the government conceded that defendants State, DoJ, and Education were not in compliance with the FOIA provisions at issue in this case in its Reply & Opposition, but now asserts that the agencies are in compliance. *See supra* Part I.B. The declaration of Margaret P. Grafeld—the director of State's Office of Information Resources Management Programs and Services—recounts State's efforts to comply with § 552(g) of FOIA. The declaration states that State is in the process of making an inventory of its records publicly available by posting a detailed listing of its records disposition schedules on its web site. Grafeld Decl. ¶¶ 8–10. State appears to have completed this process.[15] *See* Pl.'s PRA Cross–Mot., Ex. 12. In its PRA cross-motion, plaintiff

---

**14.** DoE's index and description of its major information systems are posted at the web site: <http://www.hr.doe.gov/es/infosrcs. htm>. Although plaintiff's FOIA cross-motion suggested that DoE had not provided any descriptions of its information systems, Pl.'s FOIA Cross–Mot. at 28–29, upon reviewing DoE's web site, the Court finds that DoE is in compliance with this FOIA provision.

**15.** State's records disposition schedules are posted at: <http://foia.state.gov/records. htm>.

admits that "[t]he public dissemination of this list represents a tremendous improvement in [State's] compliance with the FOIA." Pl.'s PRA Cross–Mot. at 27. Nevertheless, the Court finds this list inadequate because it does not identify or contain a description of State's major information systems. Moreover, as a list of information systems, it is incomplete because, by definition, it excludes unscheduled records.[16] Thus, to the extent that State's records disposition schedules contains its (unidentified) major information systems, they exclude potential major information systems consisting of unscheduled records. The government has not explained why systems containing unscheduled records should be excluded from the definition of "major information systems." Importantly, because agencies are under no fixed deadline to schedule their records, using lists of scheduled records to comply with FOIA's indexing requirement could result in significant omissions from an agency's index of its major information systems. *See id.* § 1228.22 ("Ultimately, all records of an agency must be scheduled, but they need not all be scheduled at the same time. An agency may schedule the records of one function, program or organizational · element at a time."); *see also id.* § 1228.24 (describing process of scheduling records). In sum, State has not provided a description of its major information systems, and has misapplied the OMB circular definition by categorically excluding systems containing unscheduled records.

### f. *DoJ*

Plaintiff's PRA cross-motion states that, since June 1998, DoJ has expanded its index of major information systems from 17 to 160 items by requesting that individual components of DoJ submit lists of their major information systems to a Task Force created to oversee DoJ's compliance process.[17] *See* Pl.'s PRA Cross–Mot. at 30. Plaintiff nevertheless alleges that DoJ's index of major information system remains incomplete because Michael Jordan, the head of the Task Force, allegedly gave the DoJ components improper advice as to which systems met the definition in the OMB circular. *See id.* at 31–32. First, plaintiff contends that Jordan often instructed the components to use a "common sense approach" in preparing their list of major information systems. *See* Jordan Dep. at 46:6—47:4. Nevertheless, Jordan indicated that the Task Force advised the DoJ components to use the OMB circular definition. *See, e.g., id.* at 30:22—31:12, 43:5–8, 44:12. It was only when the components contacted him with questions that he would use a "common sense approach" to answer them. *See id.* at 44:6–7. And, even when employing this approach, Jordan still reviewed the definition of "major information system" with the inquiring component. *See id.* at 45:11–13, 45:22–46:1. The Court finds that Jordan's statement about using a "common sense approach" in assisting the DoJ components compile their lists of major information systems does not evidence an improper application of the OMB circular definition.

■ Plaintiff also challenges Jordan's instruction to the DoJ components to exclude their word-processing and e-mail systems, and those systems that were classified or sensitive. *See* Pl.'s PRA Cross–Mot. at 32 (citing Jordan Dep. at 48, 50). The Court agrees with plaintiff that DoJ's categorical exclusion of word-processing

---

**16.** "Unscheduled records are records the final disposition of which has not been approved by NARA." 36 C.F.R. § 1220.14. Plaintiff cites the exclusion of unscheduled records in connection with its PRA claim as proof that State's inventory is neither current nor complete, but does not appear to cite this ground to challenge State's index under FOIA. The Court, however, finds that the exclusion of unscheduled records bears on State's compliance with its FOIA obligations.

**17.** DoJ's index may be accessed at <http://www.usdoj.gov/04foia/misalphabetical.htm>. Each listing of a major information system contains a link to a description of the system.

and e-mail systems was unwarranted. First, the OMB interpretation of Circular A–130 recognizes that a word-processing system may constitute an information system by virtue of being a general support system and, as such, may qualify as a major information system by satisfying the criteria in the OMB circular. *See supra* Part III.B.1. Second, the Court discerns no basis in Circular A–130 to categorically exclude e-mail systems from an index of major information systems; tellingly, defendant OA has designated one of its e-mail systems as major. *See* Gallant Decl., Attach. B (index of OA's major information systems listing Automated Records Management System, which "[s]erves as an internal storage for capturing electronic mail messages created and received by agencies within the Executive Office of the President.").

■ With respect to systems of a classified or sensitive nature, the Court disagrees with plaintiff's interpretation of Jordan's deposition as evidence that DoJ excluded all of those systems from its index. Jordan explained that DoJ generally made a distinction between the existence of a system and the information within the system. *See* Jordan Dep. at 50:20—51:3. If the existence of a system was classified for national security reasons, it was excluded from the index of major information systems. *See id.* at 51:4–8. However, if the existence of a system was not classified, but its contents were difficult to access due to their classified or sensitive nature, the system was not necessarily excluded; rather, the particular DoJ component made an individualized assessment of whether the system was appropriate to include in the inventory.[18] *See id.* at 51:10–22; 53:4–9. Plaintiff has not alleged that this case-by-case determination resulted in the improper exclusion of a particular system, and has not explained why

a system whose existence is classified should be included in DoJ's index. On the record before it, the Court does not find that DoJ's method for indexing its classified and sensitive information systems was improper.

### g. *Education*

■ As with State and DoJ, the government conceded in its Reply & Opposition that Education was not in compliance with the FOIA provisions at issue in this case. Plaintiff's PRA cross-motion, filed over one year later, alleged that, even though Education had formed a "FOIA Working Group," it had still failed to complete an inventory of its major information systems. Pl.'s PRA Cross–Mot. at 33–34. The government's opposition to this cross-motion states that Education completed its inventory of major information systems, and made it available on its web site, on December 20, 1999—the date the government's opposition was filed. Defs.' Opp'n at 3–4 (citing Burrow Decl. ¶ 3). Plaintiff contends, however, that this inventory is deficient for two reasons. First, plaintiff contends that it improperly excludes manual systems. The Court agrees. Education's "Electronic FOIA Reading Room", *see* <http://www.ed.gov/offices/OCIO/info-coll/info9.html>, does not contain a specific listing for Education's major information systems, but rather contains a link titled "Inventory of ED Information Systems." A footnote at this site states that the inventory "is a complete inventory of automated systems, including those which are 'major information systems' and those which are not." Pl.'s PRA Reply, Ex. 31, at 1 n.*. Thus, Education has not included manual systems in its inventory of information systems. Manual systems, however, should not be excluded out of hand because "information systems," which form the pool of possible major information systems, encompass both automated and man-

---

18. With respect to indexing these systems, Jordan stated: "[I]t was a call of the components, .... There are some systems listed there that are very sensitive, but they're still listed. But getting the information is going to be prohibitively difficult, if not impossible." *Id.* at 51:17–22.

ual systems. *See* 61 Fed.Reg. at 6431. Thus, Education has misapplied the OMB circular definition of a "major information system" by categorically excluding manual systems. The Court also finds that Education's inventory does not comply with § 552(g)(2) because it does not contain a description of its major information systems.

■ Plaintiff also challenges Education's "Inventory of ED Information Systems" on the ground that it appears to be Education's "Y2K List," which it developed to ensure that its systems were Y2K compliant. *See* Pl.'s PRA Reply at 16 (citing Tressler Dep. at 18, 53). According to plaintiff, the Y2K List does not satisfy Education's FOIA obligations because an internal memorandum by Education's Deputy Chief Information Officer states that the Y2K List must be updated and expanded to meet the FOIA index requirement. *See* Pl.'s PRA Cross–Mot., Ex. 29. Assuming *arguendo* that Education's Inventory of ED Information Systems is nothing more than a non-updated version of its Y2K List, plaintiff has not convinced the Court that this list is inadequate. John Tressler, the head of the FOIA Working Group, stated that, while the Y2K List needed "refinement," it was still "minimally adequate" to meets the FOIA indexing requirement. Tressler Dep. at 20:5–14. Moreover, as an example of the necessary refinement to the list, Tressler discussed removing certain systems for which Education was not solely responsible, *see id.* at 20:16–21; Tressler did not indicate that an "enhancement" to the list necessarily was required, though he did not rule out this possibility, *see id.* at 21:12–17. On the basis of this record, therefore, the Court does not conclude that Education's possible use of its Y2K list ran afoul of its obligation to index its major information systems.

**h. *Summary***

In summary, the Court finds that defendants OMB, USTR, State, DoJ, and Edu-cation have misapplied OMB Circular A–130's definition of "major information system" in compiling their FOIA indexes by: (1) focusing on whether an information system is burdensome or costly to maintain or operate, and failing to consider the two alternative prongs of the definition as independent grounds for designating an information system as "major," *see supra* Parts III.B.2.a (OMB), III.B.2.b (USTR); (2) categorically excluding word-processing systems, *see supra* Part III.B.2.f (DoJ), or excluding word-processing systems because they are not generated through a mainframe computer, *see supra* Part III. B.2.a (OMB); (3) requiring that an information system be used by more than one unit within an agency, *see supra* Part III. B.2.b (USTR); (4) categorically excluding information systems consisting of unscheduled records, *see supra* Part III.B.2.e (State); (5) categorically excluding e-mail systems, *see supra* Part III.B.2.f (DoJ); or (6) categorically excluding manual systems, *see supra* Part III.B.2.g (Education). Defendants State and Education have also failed to provide a description of their major information systems as required by § 552(g)(2). Thus, the Court grants plaintiff's FOIA cross-motion to the extent defendants have misapplied the OMB circular definition and failed to comply with § 552(g)(2) as set forth above, and enters an injunction consistent with its findings and conclusions.

**C. *Summary Judgment on Plaintiff's PRA Claim***

Plaintiff and the government each move for summary judgment on plaintiff's claim under the PRA. As discussed, plaintiff's amended complaint alleges that defendants have failed to maintain a current and complete inventory of their information systems, as required by § 3506(b)(4). The parties' cross-motions for summary judgment reflect a fundamental disagreement over the scope of an agency's obligations under § 3506(b)(4) with respect to information systems. Relying on OMB's inter-

pretation of § 3506(b)(4), the government argues that the PRA requires an agency to maintain an inventory of only its major information systems. *See* Defs.' Reply & Opp'n at 5–6; Defs.' Opp'n to Pl.'s PRA Cross–Mot. at 2. Plaintiff disputes OMB's interpretation, and argues that § 3506(b)(4) requires an agency to maintain an inventory of all its information systems. *See* Pl.'s PRA Cross–Mot. at 8–13.

At the outset, the Court addresses the government's threshold argument that, as pleaded, plaintiff's PRA claim challenges defendants' alleged failure to maintain a complete and current inventory of only their major information systems. *See* Defs.' Reply & Opp'n at 3 (citing Am. Compl. ¶ 1). The government's argument is meritless. Although the introductory paragraph of plaintiff's amended complaint states that the action challenges, *inter alia,* defendants' failure to "maintain a current and complete directory of [their] major information systems, 44 U.S.C. § 3506(b)(4)," the subsequent paragraphs setting forth plaintiff's "First Claim for Relief" allege that each defendant has "failed to maintain a current and complete inventory of [its] information systems as required by 44 U.S.C. § 3506(b)(4)." Am. Compl. ¶¶ 1, 18, 20, 22, 24, 26, 28, 30. These separate paragraphs do not limit the scope of defendants' alleged dereliction under the PRA by qualifying "information systems" with the antecedent "major." Accordingly, the Court concludes that plaintiff's amended complaint fairly pleads a claim under the PRA that defendants have failed to maintain a current and complete inventory of all their information systems.

The Court's inquiry into the proper interpretation of § 3506(b)(4) proceeds under the Supreme Court's well-known framework in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court asks "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. This inquiry requires the Court to exhaust "traditional tools of statutory construction," which include examining the statute's text, legislative history, structure, and purpose. *See Natural Resources Defense Council, Inc. v. Daley,* 209 F.3d 747, 752 (D.C.Cir.2000) (quoting *Bell Atlantic Tel. Cos. v. FCC,* 131 F.3d 1044, 1047 (D.C.Cir.1997)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. If, however, the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. Finding that Congress has not clearly expressed its intent in § 3506(b)(4) as to whether an agency must inventory all of its information systems or only those qualifying as "major," the Court upholds OMB's interpretation as a permissible construction of the statute.

Section 3506(b)(4) states that "each agency shall … maintain a current and complete inventory of the agency's information resources, including directories necessary to fulfill the requirements of section 3511 of this chapter." Plaintiff argues that the plain language of this provision indicates that agencies must maintain an inventory of all their information systems because the adjectives "current" and "complete" "foreclose any argument that a limited, incomplete inventory is all that the statute requires." Pl.'s PRA Cross–Mot. at 8. Plaintiff's argument, however, relies on the assumption that an "information system" constitutes an "information resource." The Court cannot discern a clear basis for this assumption. The statute defines "information resources" as "information and related resources, such as personnel, equipment, funds, and information technology," 44 U.S.C. § 3502(6), and defines "information system" as a

"discrete set of information resources organized for the collection, processing, maintenance, use, sharing, dissemination, or disposition of information," *id.* § 3502(8). These definitions indicate that an information system is not an information resource *per se,* but rather is a "discrete set" of information resources—a way in which they are grouped together for one of the purposes enumerated in § 3502(8). As the government argues, information systems are a "subset from the world of 'information resources.'" Defs.' Reply & Opp'n at 5. Indeed, treating an information system as an information resource would render the definition of information system circular, and produce the theoretical—yet logically suspect—scenario in which an information system could be contained within another information system by virtue of being an information resource.

■ Although the plain meaning of "information resources" and "information system" suggests that the latter is not an example of the former, the language of § 3506(b)(4) renders this conclusion uncertain. Section 3506(b)(4) describes the required inventory of information resources as one "including directories necessary to fulfill the requirements of section 3511 . . . ." The parties agree that the cross-reference to § 3511 establishes that major information systems come within the scope of § 3506(b)(4)'s inventory requirement, because § 3511 requires each agency to maintain an "electronic Government Information Locator Service . . ., which shall identify the major information systems, holdings, and dissemination products of each agency." By introducing the cross-reference to § 3511 with the term "including," however, § 3506(b)(4) also implies that an "information system" constitutes an "information resource"; under traditional rules of statutory construction, "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed.

65 (1941); *see also Dong v. Smithsonian Institution,* 125 F.3d 877, 880 (D.C.Cir. 1997) (citing *Federal Land Bank* for the proposition that "the word 'includes' normally does not introduce an exhaustive list but merely sets out examples of some 'general principle.'"). Thus, the use of "including" to cross-reference directories containing major information systems suggests that a major information system is an "illustrative application" of the term "information resources." It follows that if major information systems constitute information resources, so do information systems. *See* 61 Fed.Reg. at 6431 (defining major information system as a type of information system). As discussed, however, the statutory definitions of "information resources" and "information system" do not readily yield such a conclusion. Thus, the language of § 3506(b)(4) creates an ambiguity as to whether information systems come within the definition of information resources.

This ambiguity gives rise to two plausible readings of the provision. On one hand, Congress may have intended that "information resources" encompass "information systems." If this interpretation were clearly mandated, the Court would have little trouble concluding that agencies are required to maintain an inventory of all their information systems in light of § 3506(b)(4)'s requirement that the inventory be "complete." The cross-reference to directories containing major information systems would not undermine this conclusion because the antecedent use of "including" would indicate that the reference to major information systems was illustrative, and not intended to limit the scope of § 3506(b)(4)'s requirements with respect to information systems. On the other hand, Congress may have understood "information system" in accordance with the statutory definition of the term—*i.e.,* as a set of information resources, rather than an information resource *per se.* In this vein, Congress may have used the cross-reference to § 3511 to expand the inventory required from one containing informa-

tion resources to one containing information resources and the directories required by § 3511.[19] Nevertheless, because the plain language of the statute does not clearly ratify either interpretation discussed above, the Court turns to other tools of statutory construction for guidance in removing the ambiguity surrounding § 3506(b)(4)'s inventory requirement as it pertains to information systems.

Neither the legislative history of § 3506(b)(4) nor the effect of the 1995 PRA amendments, however, supplies this guidance. First, the statute's legislative history does not shed light on the scope of § 3506(b)(4)'s inventory requirement, as it often talks in general terms of "information resources management."[20] And, contrary to plaintiff's contention, the change in statutory language effected by the 1995 PRA amendments is equally unilluminating. Before the amendments, § 3506(c)(1) required each agency to "systematically inventory its major information systems and periodically review its information resources management activities." The 1995 PRA amendments, however, repealed this provision, and added § 3506(b)(4)'s re-

quirement that each agency "maintain a current and complete inventory of [its] information resources." Plaintiff argues that Congress's decision "to change the statutory language from 'major' to 'current and complete' demonstrates that agencies can no longer rely on inventories that are limited to 'major' systems to satisfy Section 3506." Pl.'s PRA Cross–Mot. at 9. Plaintiff's argument, however, draws an imperfect comparison. Congress did not merely add the terms "current and complete" and remove the term "major," such that the post-amendment PRA requires a "current and complete inventory of information systems." Rather, Congress changed the focus of the inventory requirement from major information systems to information resources. This altered focus brings the inquiry into § 3506(b)(4)'s proper construction back to the same question left unanswered by the Court's plain language analysis: whether an information system constitutes an information resource.[21]

In short, after exhausting traditional tools of statutory construction, the Court finds that Congress has not unambiguously

---

**19.** This interpretation is consistent with an alternative phrasing of the definition of "including" (or "includes") found in case law, which describes the term as one of "enlargement, not of limitation." *Alarm Indus. Communications Comm. v. F.C.C.*, 131 F.3d 1066, 1070 (D.C.Cir.1997) (quoting *American Fed'n of Television & Radio Artists v. NLRB*, 462 F.2d 887, 890 (D.C.Cir.1972)). This description implies that the term does more than merely introduce a non-exhaustive list of examples by expanding the definition of the preceding term. Despite this implication, however, the Court notes that in at least one case defining "includes" as a term of enlargement, the statutory provision at issue still used the term to introduce examples of a preceding term, rather than to expand that term. *See id.* (statutory provision stating that "entity" meant "any organization and includes corporations, partnerships, sole proprietorships, associations, and joint ventures."); *see also American Fed'n of Television & Radio Artists*, 462 F.2d at 889 (statutory provision stating that "person" includes "individuals, labor organizations, partnerships, associations, . . . .").

**20.** For example, a House committee reports states: "The Committee intends [§ 3506] to stand as a clear mandate to agencies that responsibility for agency [Information Resources Management] rests squarely with the agency, and that each agency is expected to take this responsibility very seriously." H.R.Rep. No. 104–37, 1995 WL 67228, *93, 1995 U.S.C.C.A.N. 164 (Feb. 15, 1995). With respect to subsection (b)(4), the report states only that each agency must "[m]aintain an inventory of information resources, including directories necessary to fulfill the Government Information Locator Service (GILS) requirements of section 3511." *Id.* at *96.

**21.** In light of this altered focus, interpreting § 3506(b)(4) to require an inventory of only major information systems would not render the change in statutory language effected by the 1995 amendments meaningless; because "information resources" also encompass such things as "funds" and "personnel," *see* 44 U.S.C. § 3502(6), the change in language would still expand the scope of the inventory requirement.

addressed the parameters of § 3506(b)(4)'s inventory requirement. Thus, the Court proceeds to step two of the *Chevron* analysis, and evaluates whether OMB's construction of § 3506(b)(4) is permissible. OMB interprets § 3506(b)(4)'s inventory requirement, as it applies to information systems, to require agencies to inventory only their major systems. *See* Arbuckle Suppl. Decl. ¶¶ 7–15. Although OMB's interpretation is entitled to deference under this prong because it administers the PRA, the Court will not uphold its interpretation if it "diverges from any realistic meaning of the statute." *Natural Resources Defense Council*, 209 F.3d at 752–53 (quoting *Massachusetts v. U.S. Department of Transp.*, 93 F.3d 890, 893 (D.C.Cir.1996)).

At the outset, the parties disagree over whether OMB has even set forth an interpretation of § 3506(b)(4). The government contends that Circular A–130 sets forth this interpretation, as the circular states that "[t]he head of each agency shall ... [m]aintain an inventory of the agencies' major information systems, holdings and information dissemination products, as required by 44 U.S.C. § 3511." 61 Fed. Reg. at 6434. Plaintiff, however, argues that Circular A–130 does not interpret § 3506(b)(4) because the quoted language from the circular cites and tracks the language of § 3511. The Court finds it unnecessary to resolve whether the OMB circular properly sets forth the agency's interpretation of § 3506(b)(4) because the Arbuckle Supplemental Declaration adequately sets forth this interpretation. As discussed *supra* in Part III.A, the Court may consider this interpretation, even though it is not set forth in a formal regulation or rule.

OMB's interpretation of § 3506(b)(4) is purportedly based on the statute's language and purpose, and the absence of relevant legislative history. First, the Arbuckle Supplemental Declaration explains that OMB has not interpreted the change in statutory language brought about by the 1995 PRA amendments to affect agencies' inventory obligations with respect to information systems because Congress did not direct agencies to maintain a current and complete inventory of their information systems, but rather of their information resources. Arbuckle Suppl. Decl. ¶ 12. While this change makes clear that "the inventory of 'information resources' under section 3506(b)(4) is to include other things apart from 'information systems,'" § 3506(b)(4)'s cross-reference to § 3511 also allegedly makes clear that, with respect to information systems, the inventory need only include major systems. *Id.* ¶ 10. Second, the Arbuckle Supplemental Declaration states that requiring agencies to focus on their major information systems is consistent with the overall purpose of § 3506(b)—to improve agencies' information resources management—because those systems "which are major pose the greatest challenge in 'information resources management.'" *Id.* ¶ 13. Finally, the declaration states that expanding the inventory requirement to cover all information systems would represent a "fundamental change" in the "PRA's longstanding requirement that an agency maintain an inventory of its major information systems." *Id.* ¶ 14. Given the asserted magnitude of such a change, OMB points to the absence of any legislative history evidencing congressional intent to expand this requirement as support for its interpretation. *Id.* ¶¶ 14–15.

For the reasons discussed under the first prong of its *Chevron* analysis, the Court does not agree with OMB that the language of § 3506(b)(4) clearly evidences Congress's intent to limit the inventory requirement to major information systems. Nevertheless, OMB's analysis still yields one of two plausible interpretations of § 3506(b)(4). Similarly, § 3506(b)'s goal of overhauling agencies' information resources management may be better served by requiring them to inventory all of their information systems, as opposed to only those qualifying as major. Nevertheless,

it is not illogical to assume that Congress would direct agencies to focus on their more important information systems during this process, particularly in the absence of any relevant legislative history explicating a change to the PRA's long-standing requirement that agencies inventory their major information systems. In short, although the factors emphasized by OMB do not provide overwhelming support for its interpretation of § 3506(b)(4), they do not undermine that interpretation either. Because OMB's interpretation of the inventory requirement is not inconsistent with the language, legislative history, or purpose of § 3506(b), the Court finds that it does not "diverge[ ] from any realistic meaning of the statute," *Natural Resources Defense Council*, 209 F.3d at 753, and, accordingly, represents a permissible construction of § 3506(b)(4).

▆▆▆▆ In summary, the Court concludes that, as it pertains to information systems, § 3506(b)(4) requires agencies to maintain a current and complete inventory of only their major information systems. Because plaintiff's amended complaint challenges defendants' compliance with § 3506(b)(4) only with respect to information systems, and because OMB Circular A–130's definition of "major information system" applies to this provision, plaintiff's PRA claim mirrors that portion of its FOIA claim challenging defendants' indexes of major information systems. In its discussion of plaintiff's FOIA claim, the Court concluded that defendants were misapplying the definition of "major information system" set forth in OMB Circular A–130. This conclusion applies with equal force to plaintiff's PRA claim. Accordingly, the Court grants plaintiff's cross-motion for summary judgment on its PRA claim to the extent defendants are misapplying the OMB circular definition, and denies the government's motion for summary judgment on this claim.

## IV. *Conclusion*

For the foregoing reasons, the Court grants in part and denies in part plaintiff's

cross-motions for summary judgment, denies as moot plaintiff's summary judgment motion against defendants State, DoJ, and Education, denies the government's summary judgment motion, and denies plaintiff's motion to strike. The Court also directs the parties to submit a joint status report, as set forth in the appropriate Order accompanying this Opinion.

## *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendants' motion for summary judgment is denied. It hereby further is

ORDERED, that plaintiff's cross-motion for summary judgment on its claim under the Freedom of Information Act ("FOIA") is granted in part and denied in part. It hereby further is

ORDERED, that plaintiff's motion for summary judgment against defendants Departments of State, Justice, and Education is denied as moot. It hereby further is

ORDERED, that plaintiff's cross-motion for summary judgment on its claim under the Paperwork Reduction Act ("PRA") is granted in part and denied in part. It hereby further is

ORDERED, that plaintiff's motion to strike is denied. It hereby further is

ORDERED, that defendants are enjoined from misapplying the definition of "major information system" in OMB Circular A–130 in the following manner with respect to their obligations under FOIA, § 552(g)(1), and the PRA, § 3506(b)(4): (1) focusing on whether an information system is burdensome or costly to maintain or operate, and failing to consider the two alternative prongs of the definition as independent grounds for designating an information system as major; (2) categorically excluding word-processing systems, or excluding word-processing systems on the

ground that they are not generated through a mainframe computer; (3) requiring that an information system be used by more than one unit within an agency; (4) categorically excluding information systems consisting of unscheduled records; (5) categorically excluding e-mail systems; and (6) categorically excluding manual systems. It hereby further is

ORDERED, that defendants State and Education are enjoined from failing to provide a description of their major information systems as required by 5 U.S.C. § 552(g)(2). It hereby further is

ORDERED, that the parties shall confer on what issues, if any, remain to be resolved in this case and how (including a proposed schedule) those issues should be resolved, and within twenty-one days of the date of this Order, shall file a joint status report with the Court outlining their respective positions on those questions. (In the event that the parties cannot agree upon a joint report, the Court will accept separate submissions.)

SO ORDERED.